SAMUEL E. OUGHTON AND JEANNETTA W. KEYSER, PLAIN-
TIFFS, v. BOARD OF FIRE COMMISSIONERS, FIRE DISTRICT
NO. 1, MOORESTOWN TOWNSHIP, BURLINGTON COUNTY ET
AL., DEFENDANTS, v. DOVER TOWNSHIP FIRE COMMIS-
SIONERS, DEFENDANTS-INTERVENORS.

Superior Court of New Jersey
Law Division Burlington County

Decided September 22, 1980.

634

*Mary Anne Polk O'Meara,* for plaintiffs.

*Ronald C. Morgan* for defendants (*Parker, McKay & Criscuolo,* attorneys).

There was no appearance for defendants-intervenors.

HAINES, J. S. C.

This matter is before me on remand from the Appellate Division. On May 7, 1979 I decided that it was not permissible for fire commissioners to establish paid positions in fire districts without prior authority from the governing bodies of their municipalities. I also held that they were not authorized to pay certain expenses otherwise budgeted for payment. That decision, reported in *Oughton v. Board of Fire Comm'rs*, 168 *N.J.Super*. 434 (Law Div.1979), was appealed. Before argument the Legislature adopted Chapter 453 of the Laws of 1979, amending a number of fire protection laws, including those relating to the payment of salaries and expenses of fire districts. This legislation occasioned the remand, which provided in pertinent part:

> *Sua sponte* we remand this case to the trial court to reconsider its determination and the judgment entered in the light of the enactment of *L.*1979, c. 453.

Shortly after the passage of the 1979 law and in accordance with one of its provisos, the Moorestown Fire District adopted a resolution authorizing the retroactive payment of salaries for positions created in 1979 and expenses, including counsel fees, otherwise prohibited as a result of my decision. Implementation of this resolution was stayed until this response to the remand could be provided.

## A. Autonomy

The history of the 1979 amendments indicates a clear intent to resolve the problems underlined in the first *Oughton* decision, a gratifying legislative response to a difficult state-wide problem. The statement accompanying the initial amendatory bill expressly set forth its intention "to nullify the primary effects" of *Oughton v. Board of Fire Comm'rs*. Statements attached to later amendatory bills reflect a like intention. Still to be resolved, however, is the question of whether the 1979 law gives fire commissioners autonomy with respect to the creation of paid fire departments. May they do so without the prior approval of municipal governing bodies? Plaintiffs argue that they may not, pointing to the reasoning in the original *Oughton*

opinion, which agreed with that contention. That conclusion was based upon an analysis of the existing statutes, particularly *N.J.S.A.* 40A:14–7 and 41, which provided express authority for municipal governing bodies to establish paid fire departments and prohibited the conversion of volunteer fire companies into such departments without voter approval. No express authority of that kind was given to fire commissioners. The first draft of the new law contained an express repealer of § 7, deleted in subsequent drafts; the statute finally adopted did not alter either § 7 or § 41. Plaintiffs rely upon this circumstance, in part, in arguing that the Legislature did not intend to change my interpretation of the earlier law. However, I have decided that the contrary is true—that fire commissioners now have independent authority to create paid positions for fire districts and to raise money for all district expenses.

It must be recognized at the outset that fire commissioners have always enjoyed a certain amount of independence, having had the authority to raise money through taxation with which to purchase equipment and supplies and pay the expense of training personnel, all without municipal approval. Nevertheless, the extension of their tax power to permit the raising of money for paid positions and for all district expenses represents a significant change in philosophy. Fire commissioners now constitute a seldom-created public body, one which decides upon the nature and extent of fire district expenses and then raises the money to meet them by taxing the owners of real estate in the district, uncontrolled except by certain annual statutory budget caps and the requirements that the voters elect them and approve their budgets. They need not, as in the case of a governing body, consider all municipal expenses and may raise money for firefighting purposes without regard to other obligations of their district taxpayers. Plaintiffs quarrel with the policy which permits this extension of power, but that dispute is not for judicial resolution. The delegation of power to fire commissioners is the business of the Legislature, subject to judicial inter-

pretation but otherwise not reviewable here. *State v. Fearick*, 132 *N.J.Super.* 165 (App.Div.1975), aff'd 69 *N.J.* 32 (1976).

No doubt the Legislature has recognized the fact that paid personnel for some fire fighting units have become a necessity. At the trial of this cause, for example, fire personnel from Old Bridge testified that fires occurred in their municipality at the rate of nearly three a day, making the burden of constant response to fire emergencies too heavy to be carried by volunteers. Furthermore, the new legislation merely recognizes the *de facto* creation of paid positions in many fire districts in New Jersey, as revealed by many witnesses. Paid fire departments have long been recognized by our statutes; only the process by which these departments are to be created has been questioned in these proceedings.

It must be assumed that the Legislature, in clarifying the authority of fire commissioners, was aware of existing practices in fire districts and intended its new law to provide for them. It said so when it announced its intention to address the effects of *Oughton*. These statements and the contemporary factual setting for the legislation constitute its history, recognized by courts as a basic guide to intention. *Levin v. Parsippany-Troy Hills*, 82 *N.J.* 174 (1980); *Accardi v. North Wildwood*, 145 *N.J.Super.* 532 (Law Div.1976). This history strongly supports the conclusion that the Legislature intended to provide fire commissioners with autonomous financial authority. This determination is further supported by the fact that the pertinent provisions of the 1979 amendment are added to *N.J.S.A.* 40A:14–81, which previously provided in full that:

> The commissioners of a fire district shall have the powers, duties and functions within said district to the same extent as in the case of municipalities, relating to the prevention and extinguishment of fires and the regulation of fire hazards.

I previously held that his language, despite its apparent breadth, did not confer any authority upon fire commissioners to pay salaries. This conclusion rested upon a general analysis of related statutes and in particular upon the lack of any express authority, as conferred upon governing bodies under *N.J.S.A.*

40A:14–7, to pay personnel. The new law gives that express authority to fire commissioners, now making clear that their powers with respect to the creation of paid departments in their districts are as extensive as those possessed by governing bodies with respect to paid municipal departments.[1]

All New Jersey fire districts, including the Moorestown district, are now empowered to create paid positions and incur expenses for district operations, subject only to voter approval of budgets. Under the retroactive section of the amending legislation they may pay past, promised salaries and previously incurred expenses, if statutory conditions are met. Moorestown proposes to make these payments. Whether it has complied with the statute in that respect requires discussion.

### B. Retroactivity

■ Section 13 of the new act reads as follows:

Any fire district which has prior to the effective date of this act, established any paid position or positions within the fire department, or for the fire district, or has incurred expenses in the operation of said district, may, by resolution of the board of fire commissioners provide for the payment of compensation to persons employed in such paid position or positions for any time of employment prior to the adoption of such resolution during which compensation was discontinued as a result of court action, and for any time remaining after the adoption of such resolution but prior to the date of final adoption of the first fire district

---

[1] It is important to point out that volunteer fire companies are not affected by the new law. It is now clear that municipalities may have three separate fire-fighting forces: volunteer companies, paid municipal fire departments and fire districts with paid personnel. Under N.J.S.A. 40A:14–41 a municipality may not convert a volunteer force into a paid department without voter approval; nothing prevents the creation of a paid municipal department which operates side-by-side with a volunteer company. When fire districts are created, volunteer companies in the district, as in the case of Moorestown, remain intact. Whether fire commissioners have authority to convert them *into paid departments is an issue to be decided.* The paid positions which fire commissioners are now entitled to create by virtue of *N.J.S.A* 40A:14–81.1 are *district* positions. The fire commissioners *may not create paid positions within the volunteer companies,* a distinction recognized in *N.J.S.A.* 40A:14–81.4, which refers to reimbursement of "employees of a fire district and ... volunteer firemen having membership in a volunteer fire company ..."

budget pursuant to this act. Such compensation shall not exceed the amount such persons would have received during such time.

It is clearly within the power of the Legislature (with certain exceptions not involved here) to make its laws retroactive. *Rothman v. Rothman*, 65 *N.J.* 219 (1974); *Skulski v. Nolan*, 68 *N.J.* 179 (1975).

■ The Moorestown fire commissioners "established" a number of paid positions in 1979 and also "incurred expenses" by way of costs and counsel fees relating to this litigation. These salaries and expenses were not paid by reason of the restraints imposed in accordance with the original *Oughton* decision. Plaintiffs, subject to their argument that only the governing body may authorize paid positions, concede that all personnel serving in these positions may be paid by virtue of § 13, except the administrator. I am in agreement with this concession, with the caveat that such payments may be made only to personnel who performed or will perform actual work in the positions created. The problem of the administrator requires further discussion. It is plaintiffs' argument that his position was created in the course of proceedings which violated the Open Public Meetings Act, *N.J.S.A.* 10:4–6 *et seq.* If so, § 15 of that law makes the action void, consequently prohibiting the establishment of the administrator's position.

### C. The Sunshine Law

The Open Public Meetings Act, frequently referred to as the "Sunshine Law," requires meetings of public bodies to be open to the public at all times, except in certain designated cases. *N.J.S.A.* 10:4–12. The Moorestown fire commissioners, who are subject to this law, decided to create the paid position of administrator for their district at a private meeting held at the home of one of the commissioners on January 16, 1979. At the same time and place a salary for the position was agreed upon. No notice of that meeting was given, as required by *N.J.S.A.* 10:4–9, and no member of the public was present. On January 22, 1979 the budget, also considered at two prior private meet-

ings, was presented and adopted at a public meeting of the commissioners. The budget contained an item reflecting the new position and the salary established for it. After a quick reading, without discussion by the commissioners or opportunity for discussion by the public, the budget was adopted. In response to an inquiry by a member of the audience, one commissioner advised that the new position had been discussed and decided upon at a closed meeting. Then, on February 8, 1979, a resolution was adopted creating the post of administrator. It does not appear that notice of this meeting was sent to any newspaper; the resolution was adopted without discussion by the fire commissioners and without opportunity for public discussion until after the resolution had received the favorable, unanimous vote of the commissioners. On April 10, 1979 an effort was made to correct these patent violations of the Sunshine Law. Resolutions were introduced and adopted confirming the creation of the administrator's position and the budgeted salary for that position. At this meeting there was no discussion of any kind by the fire commissioners regarding the resolution. The reasons for establishing the position and the salary were not mentioned. The time for public discussion had passed by the time the confirming resolution was adopted and no opportunity was then given to members of the public for any discussion concerning its passage.

■ The fire commissioners first suggested in their testimony a belief that the creation of the new job and the fixing of its salary were properly accomplished under the exception contained in *N.J.S.A.* 10:4–12(b), dealing with personnel discussions. That exception reads:

> b. A public body may exclude the public only from that portion of a meeting at which the public body discusses:
> . . . .
> (8) Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any *specific prospective public officer or employee* or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be

adversely affected request in writing that such matter or matters be discussed at a public meeting. [Emphasis added.]

The asserted belief of the commissioners is transparently incorrect. No discussion of any *specific* officer or employee was involved. The matter does not fall within any exception to the law which would allow the valid establishment of the position.

■ The principal reliance of the commissioners is placed upon the confirming resolution adopted by them on April 10, 1979. However, as pointed out by plaintiffs, the law requires that such action be *de novo, i. e.,* undertaken from the beginning as though nothing concerning the matter had happened before. *Polillo v. Deane,* 74 *N.J.* 562 (1977). Here the confirming action was perfunctory. It informed the public of nothing but the fact of a prior violation of the Sunshine Law. This does not meet the standard for a *de novo* undertaking.

■ Section 15 of the Sunshine Law provides that any action taken in violation of that law is voidable. It is clear that adoption of the original and confirming resolutions of the fire commissioners, creating the position of administrator, did not comply with law. Consequently, that position was not "established" prior to February 22, 1980, as required by § 13 of the new fire protection laws, and cannot be the subject of a retroactive payment of salary. Further, it may not be the subject of any future payments of salary until the position is created properly and a new budget adopted.

### D. Dover

■ Dover Township has two fire districts. The fire commissioners of both districts have executed a mutual services agreement pursuant to *N.J.S.A.* 40A:11–10. The arrangement is one to be encouraged, since it permits all of the taxpayers of the districts to enjoy the benefits of a joint effort, likely to reduce the total cost of fire protection. The statute permitting the agreement provides in pertinent part that

The governing bodies of two or more contracting units within the same county ... may provide by joint agreement for the purchase of work, materials and supplies for use by their respective jurisdictions.

This language clearly covers the Dover fire commissioners, who are "governing bodies of two ... contracting units within the same county." Their mutual services agreement provides for "work, material and supplies" for their districts. The statute should be read *in pari materia* with the 1980 amendment to the fire laws which permits the creation of paid positions and the incurring of expenses by fire commissioners, thereby supporting the conclusion that the Dover agreement is valid and enforceable. *Oughton, supra* 168 *N.J.Super.* at 443.

### E. Reimbursement for Expenses and Losses

The original *Oughton* decision held that firemen could be reimbursed for expenses and losses only from a fund created by a municipal governing body, pursuant to *N.J.S.A.* 40A:14–36. Section 81.4 of the 1979 amendments now authorizes fire commissioners to appropriate monies for this purpose in their annual budgets. It should be noted that the monies so appropriated must be used for the payment of "expenses and losses actually incurred in the performance of their duties."

### F. Fire Prevention Subcode Officials

The new fire protection laws do not overrule the holding of the original *Oughton* decision with respect to fire prevention subcode officials. They are still municipal, and not fire district, officials.

### G. Civil Service

The Township of Moorestown became subject to the Civil Service Act, *N.J.S.A.* 11:1–1 *et seq.*, by favorable action of its electorate on November 5, 1957. Plaintiffs argue that firemen appointed to paid positions in Moorestown Fire District No. 1 are subject to Civil Service statutes. The District takes a neutral position and seeks a determination of the issue. It was not addressed in the original *Oughton* opinion because it reached the conclusion that fire districts could not create paid positions. It is addressed here in response to the broad requirements of the remand by the Appellate Division.

(1) *Basic Rules Regarding Application of the Civil Service Act*

The *N.J.Const.* (1947), Art. VII, § I, par. 2, implemented by *Title* 11 of the *Revised Statutes* provides that

Appointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive . . .

A fire district operated by fire commissioners is a "political subdivision." The question is whether the Legislature has made the Civil Service Act applicable to such a subdivision.

The philosophy motivating the adoption of the Civil Service Act and the obligation of the courts with respect to its interpretation are set forth in *Connors v. Bayonne,* 36 *N.J.Super.* 390, 396 (App.Div. 1955), certif. den. 19 *N.J.* 362 (1955): "Primarily it was to remove employment in the classified service from political control, partisanship and personal favoritism, and to maintain stability and continuity in ordinary public employment. Therefore it behooves the judicial branch of the government to give the widest possible range to the application of the law.

For Civil Service purposes employees of a municipality are divided into the classified and the unclassified services. *N.J.S.A.* 11:22–1. Persons in the unclassified service are not subject to Civil Service requirements and are identified in *N.J.S.A.* 11:22–2. Firemen are not so identified and therefore, if otherwise subject to *Title* 11, are in the classified service, pursuant to *N.J.S.A.* 11:22–3, which states that "all persons in the paid service of a . . . municipality . . . not included in the unclassified service" are included in the classified service.

*N.J.S.A.* 11:21–1 states that an "appointing authority" subject to Civil Service requirements must select persons for appointment or employment in accordance with *Title* 11. *N.J.S.A.* 11:19–1 defines an "appointing authority" as

. . . an officer, commission, board or body having power of appointment or election to, or removal from, subordinate positions in an office, department, commission, board or institution of a county, municipality or school district operating under this title.

The same section defines a "municipality" as "a city, town, township, village, borough, any municipality governed by a board of commissioners or improvement commission, or other such local civil government." A literal reading of these provisions would bring fire commissioners within the definition of "appointing authority" if they are commissioners of a municipality.

From this background it is apparent that paid firemen in municipal fire districts in New Jersey should be provided with Civil Service protection if there is sufficient evidence that this was the intent of the Legislature. The approach to intent requires an analysis of the statutes relating to the issue and the application of basic principles established by cases addressing related problems. No case has considered the question raised here.

### (2) *The Cases*

Past cases dealing with the application of the Civil Service laws to county and municipal bodies, apart from the counties and municipalities themselves, based determinations of legislative intent upon an analysis of two basic concepts: (1) whether the body in question was subject to the control of the county or municipality and (2) whether the powers given to the body by the enabling legislation were in conflict with the powers given to the Civil Service Commission. In *Atlantic Community College v. Civil Service Comm'n*, 59 *N.J.* 102, 107 (1971), the court held that nonprofessional and noninstructional employees of county community colleges in counties which had adopted Civil Service were separate political subdivisions "which serve a separate purpose and operate apart from the governing bodies of the counties in which they were situated." Consequently, it found that they were not agencies of county government. The fact that the colleges received financial support from the counties was regarded as "merely evidence of whether the Legislature intended Civil Service to apply to the public body. Where a public body is completely financed or controlled by a political

subdivision, a court is justified in concluding that the Legislature intended the employees of that body to be treated the same way as other employees of the political subdivision." (At 111). The decision turned upon the fact that the trustees of the colleges had the power to appoint employees and "to fix and determine their qualifications, duties, compensation, terms of office and all other conditions and terms of employment and retention." (At 112). The court said: "These are the very subjects with which Civil Service deals and are in direct conflict with the powers granted to the Civil Service Commission." *Id.* Since the court found it impossible to reconcile the trustees' powers with those given to the Civil Service Commission, it concluded that the Legislature did not intend Civil Service laws to apply to the employees of the colleges.

In *State v. Trenton Parking Auth.*, 27 *N.J.Super.* 284 (Law Div. 1953), aff'd 29 *N.J.Super.* 335 (App.Div.1954), the question was whether employees of the Parking Authority were subject to Civil Service provisions. The court held that they were not. It found that the Authority, "although created by and in a municipality, is an independent public corporate entity, distinct and separate from the municipality." (At 339). Then, addressing legislative intent, it found that the powers of the Authority, set forth in enabling legislation, to hire employees and to "determine their qualifications, duties and compensation" and to "delegate to one or more of its agents or employees such powers and duties as it may deem proper" were not compatible with various provisions of the Civil Service Act. The court pointed out, for example, that under *N.J.S.A.* 11:22–12 "no person in the civil service could be 'appointed or employed under any title not appropriate to the duties to be performed nor assigned to perform the duties other than those properly pertaining to the position which he legally holds,'" while under the above-quoted language of *N.J.S.A.* 40:11A–5 the Authority could delegate to its employees any duties it deemed proper. This could not be done if *Title* 11 covered its employees. (At 339). As a conse-

quence, the court concluded that the Legislature did not intend the employees of the Authority to be subject to Civil Service.

### (3) *Agency as Basis for the Application of the Civil Service Act*

If the decision to be made here turns upon the question of agency, *i. e.*, whether the fire district and its commissioners are subject to the control of the municipality and its governing body, it is clear that the Civil Service Act does not apply to the district's employees. I have decided that the commissioners constitute an autonomous body, operating with almost complete independence. Consequently, the fire commission is not "a body having power of appointment ... to ... or removal from, subordinate positions in an office, department, commission ... of a municipality operating under this title," *N.J.S.A.* 11:19–1, as that language has been interpreted by the above-cited cases. It is apparent, however, that an autonomous subdivision, such as a fire district, may be subjected to Civil Service requirements if the Legislature so intends. It has, for example, made local housing authorities so subject, *N.J.S.A.* 55:14A–6.1 and 6.2, even though these authorities were found to be completely independent of the municipalities which established them. *Monte v. Milat,* 17 *N.J.Super.* 260 (Law Div. 1952). Thus, the fact that a particular municipal body is not an agency of the municipality is not controlling. This makes it necessary to consider the question of the legislative intent as evidenced in any conflicts between the powers given to fire commissioners over fire districts and those given to the Civil Service Commission.

### (4) *The Conflict of Powers Theory as a Basis for the Application of the Civil Service Act*

*N.J.S.A.* 40A:14–81.1, adopted in 1979, provides in pertinent part that

> The commissioners of any fire district may, by resolution, establish paid positions within the fire department, or for the fire district, as such positions shall be determined by the commissioners to be required for the purposes of the fire district. The commissioners shall by resolution appoint persons to, deter-

mine the terms of, fix the compensation for, and prescribe the powers, functions and duties of all paid positions so established . . .

These powers are in substantial conflict with numerous powers given to the Civil Service Commission. Thus, under *N.J.S.A.* 11:24–1 to 3 the latter may suggest salaries and wages to be paid and may provide "definite specifications and standards of services, grades, duties, qualifications, titles . . . ." *N.J.S.A.* 11:21–4 allows for promotions and dismissals, but states that they are subject to Civil Service rules. *N.J.S.A.* 11:22–12 requires that assigned duties relate to positions held by employees. It should be noted, however, that the conflicts are not as clear as those discussed in *Atlantic Community College, supra*, and *State v. Trenton Parking Auth., supra.* In both of those cases the independent political subdivision was authorized by specific statutory language to determine the "qualifications, duties, compensation, terms of office and all other conditions and terms of employment and retention." See *N.J.S.A.* 40:11A–5, *N.J.S.A.* 18A:64A–12(g). The broad sweep of this language does not appear in the new statute relating to fire districts. Nevertheless, the conflict of authority is still substantial and without more would require the conclusion that the Civil Service Act does not apply to firemen in fire districts.

Another reflection of legislative intent must be examined before reaching this conclusion, namely, the application of the Civil Service statutes to employees of paid municipal fire departments. These departments may be created by municipalities under *N.J.S.A.* 40A:14–7, which provides, in language nearly identical to that found in *N.J.S.A.* 40A:14–81.1, that

The governing body of any municipality by ordinance may create and establish a paid or part-paid fire department and force and provide for the maintenance, regulation and control thereof, and except as otherwise provided by law appoint such members, officers and personnel as shall be deemed necessary, determine their terms of office, fix their compensation and prescribe their powers, functions and duties, and adopt and promulgate rules and regulations for the government of the department and for the discipline of its members.

The existence of this statute and these powers denies the validity of the conflict-of-powers theory in the present quest for legislative intent. This is so because it is clear that employees

of paid municipal fire departments, notwithstanding the apparent conflict between the powers given to governing bodies by *N.J.S.A.* 40A:14–7 and the similar powers given to the Civil Service Commission, are still protected by the Civil Service laws. This coverage is recognized in numerous references to Civil Service in the 1971 revision of the fire laws, *N.J.S.A.* 40A:14–7 to 105. The following sections of *Title* 40A are illustrative: 14–9.1 provides for nonresidents of a municipality in which Civil Service Act is operative to be eligible for appointment to its paid fire department; 14–9.4 requires positions in the paid fire department of a Civil Service municipality to be based upon merit, with a certain preference for residents; 14–10.1a(c) provides rules for the certification of eligible appointees to paid fire departments by the Civil Service Commission in municipalities subject to Civil Service; 14–12 fixes age requirements with reference to Civil Service rules. *East Pennsauken Volunteer Fire Ass'n No. 1 v. Pennsauken Tp.*, 85 *N.J.Super.* 104 (App.Div. 1964), held that firemen in a volunteer fire association who were paid by the municipality were municipal employees subject to Civil Service regulation. That is the only case dealing directly with the Civil Service status of firemen in New Jersey; it did not involve a fire district. *See, also, Blum v. Civil Service Comm'n*, 128 *N.J.L.* 30 (Sup.Ct. 1942), aff'd 129 *N.J.L.* 75 (E. & A. 1942). The Civil Service Act expressly subjects members of fire departments in Civil Service municipalities to the provisions of the act, *N.J.S.A.* 11:21–5.1, while providing that certain rights of firemen are not to be affected by its provisions, *N.J.S.A.* 11:22–24. This statute was narrowly construed in *Hammonton v. Civil Service Comm'n*, 82 *N.J.Super.* 64 (App.Div. 1964), certif. den. 42 *N.J.* 140 (1964). Since the Legislature has enacted statutes making paid municipal fire departments subject to Civil Service regulation, notwithstanding the conflict of powers delegated to municipal governing bodies with those held by the Civil Service Commission, it cannot be argued that the nearly identical conflict involving fire commissioners and the Civil Service Commission denies a legislative intent to provide Civil Service

protection to paid firemen in fire districts. Indeed, the opposite inference should be drawn: since the Legislature intended paid firemen in paid municipal fire departments to be protected by Civil Service, notwithstanding the conflict of powers, it is reasonable to assume that it also intended to provide that protection to paid firemen in fire districts in similar circumstances.

(6) *Other Bases for Application of the Civil Service Act*

Additional reasons support the logical conclusion that firemen in fire districts are protected by Civil Service provisions. In 1971 the Legislature adopted *N.J.S.A.* 40A:14–81, which provided in full as follows:

> The commissioners of a fire district shall have the powers, duties and functions within said district to the same extent as in the case of municipalities, relating to the prevention and extinguishment of fires and the regulation of fire hazards.
>
> Nothing contained herein shall be deemed to affect the powers, duties and functions of the State Department of Environmental Protection pertaining to forest fire services.

One of the "duties" of a municipality electing to be bound by Civil Service laws is to observe the requirements of those laws. The 1971 statute imposes that same duty upon boards of fire commissioners. Furthermore, while this statutory provision specifically provided for the supremacy of the powers of the Department of Environmental Protection, it said nothing about the powers of the Civil Service Commission. Consequently, when providing fire commissioners with the same powers and duties as municipalities, the Legislature did not exempt fire districts from existing Civil Service requirements by any express language, an omission which indicates that such an exemption was not intended.

This conclusion is also buttressed by the fact that those portions of the 1979 fire laws which expressly authorized the employment of paid personnel by fire districts, *N.J.S.A.* 40A:14–81.1 to 81.4, are additions to the original and otherwise unchanged provisions of *N.J.S.A.* 40A:14–81. Consequently, they require an interpretation of § 81 which shows a legislative intent, in its broad language giving commissioners of fire dis-

tricts the same "powers, duties and functions" as municipalities, to provide wide ranging powers and duties for fire commissioners, thereby putting fire districts in the same position as municipalities with reference to fire prevention and fire fighting activities. The history of the 1979 legislation shows that it was designed to overcome a contrary reading of § 81 provided by the original *Oughton* decision. The same intent may be found in the circumstance that the language of *N.J.S.A.* 40A:14–81.1, which authorizes district appointments to paid positions, is almost identical to the language of *N.J.S.A.* 40A:14–7, authorizing such appointments to municipal paid positions.

As indicated in *Atlantic Community College v. Civil Service Comm'n, supra* 59 *N.J.* at 111, support of or control over a public body by a Civil Service community is evidence, though not conclusive evidence, of legislative intent that the public body is subject to Civil Service. Here, while there is no longer any significant municipal control over fire commissioners by way of financial aid or otherwise, it should be remembered that the source of financial support for both municipality and fire district is the same, namely, tax revenues derived from assessments upon real estate in the community. Thus, in the ultimate sense, the source of funds is the municipality through its taxpayers. Furthermore, municipalities do retain certain authority in connection with fire districts, notwithstanding the 1979 act. Under *N.J.S.A.* 40:148 and 40A:14–34 municipalities may raise money for fire protection which may or may not go to a fire district, taxing property owners within the entire municipality for that purpose. *N.J.S.A.* 40A:14–88 subjects the compensation of fire commissioners to review by the municipal governing body. That body is given the right to enlarge and dissolve fire districts, *N.J.S.A.* 40A:14–90 and 91, authority unlikely to be included in the broad provisions of *N.J.S.A.* 40A:14–81, notwithstanding the liberal interpretation to which it is now entitled.

After analyzing these factors, simple logic compels a conclusion that the Legislature intended that paid firemen in a fire district receive the same Civil Service protection as provided to

paid firemen in municipal fire departments. As a practical matter there is no real distinction between the paid fire personnel in either department. A fire chief in a municipal department and one in a fire district may perform identical functions. As noted, the source of compensation is the same for both of them: real estate tax revenues. It would not be reasonable to conclude that the Legislature intended to confer Civil Service protection upon the paid employee of the municipal department and not upon the paid employee of the fire district in the municipality, when the only difference between them is in the identity of the appointing authority.

(7) *Conclusion*

For all of these reasons, I conclude that paid employees of fire districts are subject to circumstances which clearly distinguish them from employees of other autonomous political subdivisions, such as county colleges and parking authorities, requiring them to be treated differently. The rationale applying to these other bodies does not apply to them. It is obvious that the Legislature intended that firemen be protected by the Civil Service Act when they are paid, whether they are serving a municipal fire department or a fire district.

### H. Counsel Fees

(1) *Counsel to the Fire District*

The district employed counsel at the beginning of this litigation, prior to the adoption of *N.J.S.A.* 40A:14–81.1. At that time, as held in the prior *Oughton* opinion, such employment was not authorized and I denied counsel's right to compensation. However, the Legislature authorized such payment, on a retroactive basis, in § 13 of *L.*1979, *c.*453, quoted in full above. The counsel fees in question constitute an expense now payable by the commissioners at their discretion.

### (2) *Counsel to Plaintiffs*

This is a taxpayers' action and counsel to plaintiffs now seek compensation for their services. Their application was invited by me for two reasons: (1) simple fairness, since the right of opposing counsel to receive compensation was at issue, and (2) to permit resolution of questions relating to counsel fees for plaintiffs at trial level, so that all issues in this matter will be available for further appellate review. I consider this to be germane to the reconsideration requested by the Appellate Division in its remand.

Our *Rules* restrict the payment of counsel fees to certain specified circumstances. *R.* 4:42–9. Plaintiffs rely upon that portion of the rule which allows fees to be paid "out of a fund in court," the allowance of which is discretionary. The theory finds support in the cases.

The philosophy permitting the payment of fees from a fund in court is set forth in *Sunset Beach Amusement Corp. v. Belk*, 33 *N.J.* 162 (1960):

> In general, allowances are payable from a "fund" when it would be unfair to saddle the full cost upon the litigant for the reason that the litigant is doing more than merely advancing his own interests. Thus, for example, when there are classes of claimants to the fund and the services rebound to the benefit of others as well, it is fair that all contribute to the cost by a charge against the subject matter. [at 168]

In *Sarner v. Sarner*, 38 *N.J.* 463 (1962), the court allowed counsel fees in a stockholders' derivative suit. It said that:

> The term "fund in court" is one of art. It is applied where plaintiff's actions have created, preserved or increased property to the benefit of a class of which he is a member. [Citations omitted]
>
> ... [I]t is not necessary that the fund be actually and physically in court; it is sufficient if, as a result of plaintiffs' action, the fund is brought within the control of the court. [at 467–468]

A fund brought within the control of the court in a taxpayers' action is subject to the allowance of counsel fees. This is a recognition of the fact that the taxpayer who brings the action will receive a minimal benefit as an individual while incurring

all of the expenses of litigation. *Tabaac v. Atlantic City*, 174 *N.J.Super.* 519 (1980).

In the present case the monies brought within the control of the court by virtue of the litigation were those reflected in the challenged portion of the fire district budget for 1979–80, a budget totaling $237,867.50. The suit, however, raised substantial issues affecting the financing of fire districts, not only in that budget year but in all future budget years. Plaintiffs were successful in their litigation at the trial level, saving the taxpayers of the Moorestown Fire District over $18,000 for the year in question. A further saving of $15,265 has been realized by virtue of the denial of the commissioners' right to appoint an administrator for the reasons set forth in this opinion, subject to whatever arrangements in that respect may be undertaken in accordance with law. These savings would have multiplied over future years if the opinion of this court, from which an appeal was pending, were sustained. That potential disappeared as a result of the 1979 legislation. Nevertheless, plaintiffs, by virtue of this litigation, not only saved the taxpayers of the Moorestown Fire District substantial monies but also benefited all the State's taxpayers, fire commissioners and firemen by triggering the enactment of new legislation which resolved many existing fire district problems. The 1979 law provides fiscal protection to the public in its advertising and budget provisions, and through this opinion provides civil service protection to all affected fire districts. Under these circumstances it is apparent that plaintiffs not only have created a fund in court from which counsel fees may be awarded, but have performed valuable services not measurable by actual monetary savings. It is not necessary that the fund be actually and physically in court. It is sufficient if, as a result of plaintiff's action, the fund is brought within the control of the court. *Tabaac v. Atlantic City, supra.* Certainly, a taxpayer who performs an important public service which saves and will save public monies, and which protects and will protect the public treasury, should not have counsel fees and costs incurred in

achieving that end denied or restricted by reason of a change in the law which validates prior unauthorized practices, a change brought about by the litigation itself. In these circumstances appropriate compensation should take into consideration, as a "fund in court," both present and prospective savings.

Plaintiffs were represented by two attorneys. The proofs presented in support of the application for counsel fees show that 255 hours were spent in the pursuit of this litigation at the trial level.[2] The time expended is not surprising when the breadth of the litigation and its complexities are considered. Counsel request compensation at the rate of slightly over $40 an hour. This hourly rate is very modest. It is generally recognized that law office overhead consumes in the neighborhood of 50% of a given fee. It is doubly modest when published figures indicate that hourly compensation for attorneys today is substantially more than $50 an hour. At a $40 rate counsel would be entitled to a fee of $10,000 ($40 × 255, rounded). This compares favorably with the fees paid to counsel for the district, amounting to $18,983, fees which are payable by the commissioners and not subject to the discretionary allowance of the court.

I conclude that $10,000 should be allowed to plaintiffs for counsel fees. This represents a modest allowance for the services rendered by plaintiffs' counsel in connection with this suit. It is substantially less than the going rate for attorneys' services, taking into consideration the difficulties of this case.

The proofs submitted by plaintiffs did not include actual out-of-pocket costs incurred by them in connection with these proceedings. These costs, if reasonable, should be allowed in addition to counsel fees. An allowance for costs will be made, provided counsel submit a sworn and itemized statement within ten days. Defense counsel will have five days from the service of such proofs within which to object.

---

[2] Fees for appellate services may be allowed only by the Appellate Division.

The fees allowed and costs, if any, shall be paid by the fire commissioners from funds available for such purpose, if permitted by law, and otherwise by including the expense in the budget next to be submitted to the voters. The allowances for fees and costs shall bear interest at the rate of 8% a year from September 1, 1980 until paid.