98 N.J. Super. 76 (1967)
236 A.2d 160
HELENE ZALEJKO, PLAINTIFF-RESPONDENT,
v.
RADIO CORPORATION OF AMERICA, A CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT, AND RADIO COMMUNICATIONS ASSEMBLERS UNION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1967.
Decided November 28, 1967.
*78 Before Judges KILKENNY, CARTON and FRITZ.
Mr. F. Morse Archer, Jr., argued the cause for appellant (Messrs. Gassert & Murphy and Messrs. Archer, Greiner, Hunter & Read, attorneys).
Mr. John A. Craner argued the cause for plaintiff-respondent (Messrs. Craner & Brennan, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendant Radio Corporation of America (hereinafter "RCA") alone appeals from a judgment of the Chancery Division entered on January 3, 1967 permitting plaintiff to present, by herself or through representation by defendant union, her grievance against RCA at step No. 3 of the grievance procedure provided in the collective bargaining agreement made by RCA, her former employer, with the union, of which she was at the time in issue a member. The judgment further provided that plaintiff shall first request defendant union that it represent her, and if the request is denied, then plaintiff may present the grievance herself at said step No. 3.
Other relief sought by plaintiff was denied, but she takes no cross-appeal from such denial. Though served, defendant *79 union has informed the court that it has decided to file no brief or appendix in this pending appeal.
Plaintiff's grievance is a claim of wrongful termination of her employment by RCA. A brief summary of the facts is essential in order to put the legal issues in proper focus.
Plaintiff was in the employ of RCA from August 1, 1956 until termination of her employment on December 10, 1962. On September 30, 1962 she was involved in an automobile accident unrelated to her employment. She suffered injuries, consisting principally of a low back sprain and a "whiplash" of the neck. The consequential disability made her physically unable to perform the duties of her job. Though no hospitalization was required, plaintiff was under the medical care of Dr. Fenick, who advised against her returning to work until she was able to do so.
On October 22, 1962 plaintiff, who was still absent from work, submitted to a physical examination by Dr. Schutt, a plant physician of RCA. He granted her a medical leave of absence. Dr. Schutt further examined her on November 21, 1962 and again on November 30, 1962. When he then found no objective signs of injury, he sent her for examination on the last-mentioned date to a Dr. Sweeney, an orthopedic surgeon. Dr. Sweeney was of the opinion that she could return to work. Dr. Schutt examined her once more on December 7, 1962 and concluded that she was physically able to resume her job.
Plaintiff's medical leave was terminated as of December 10, 1962. That same day she was notified by telegram to return to work. When she failed to do so, RCA terminated her employment. Plaintiff's grievance is that RCA acted wrongfully when it did so because she was not yet physically able to return and her own treating physician advised her not to return.
Plaintiff presented her grievance to representatives of defendant union for processing under the collective bargaining agreement. Her position was that she was unjustly terminated while on medical leave.
*80 The union processed plaintiff's grievance through the initial steps of the grievance procedure set up in the collective bargaining agreement. Representatives of RCA and the union met on December 27, 1962 to discuss the grievance in question. This was the meeting required in the third step of the agreement. RCA and the union met once again on February 4, 1963 as the fourth step of the grievance procedure. Plaintiff was present at that meeting. There were further discussions between RCA and the union in connection with the grievance between February 5 and February 12, 1963. RCA told the union that it would reinstate plaintiff if she returned to work immediately. This offer was communicated to her but she declined to accept it for the reason, as testified to by Eleanor Goldsmith, the union's representative:
"She said it would be impossible for her to come to work because she wore a brace and it would be hard for her to perform her job and that her doctor said she could not come to work; she was not ready. That's when I asked her for more information about her injuries so that I could present them to Mr. Gordon."
The union consulted its attorney and he advised that under section 7.03 of the bargaining agreement an employee was under a duty to return to work or face termination, if the plant physician certified that the employee was able to return. Based upon his advice and the other information before it, the union notified RCA that it did not intend to take the grievance in question to arbitration.
Thereupon, plaintiff instituted suit in the Chancery Division to compel her reinstatement, or to compel arbitration in accordance with the collective bargaining agreement, and for other relief not pertinent in the present appeal. The case was tried before Judge Furman with the result first noted above.
Judge Furman properly observed in his oral opinion and findings that he was not adjudicating the medical-legal question of plaintiff's physical ability to return to her work *81 on December 10, 1962. The question was, rather, whether "this grievance has been presented fairly and fully by the Union at steps three and four." (Emphasis ours).
Judge Furman found that the union was hampered by the opinion of its attorney; that "the Union throughout these negotiations made no effort to strike home to the company representatives the conflicting opinion of Dr. Fenick or any report by Dr. Fenick or Dr. Pollen," the latter being another doctor who examined plaintiff; and that "no real effort was made by the company or the Union to make available or to gain possession of any medical report from Dr. Fenick or Dr. Pollen." He noted testimony by plaintiff that at the step 4 meeting on February 4, the union did not show any papers or say anything about her case to the company representatives, although Dr. Fenick had sent his report to the union. Mrs. Goldsmith acknowledged in her testimony that neither she nor any other union representative had presented Dr. Fenick's report that plaintiff should not go back to work.
Judge Furman determined that the union had acted "without bad faith," but he nevertheless concluded that "the Union has not adequately or did not adequately represent Mrs. Zalejko at step three or step four of the grievance procedure. So she should have that opportunity." In making his decision, the trial judge expressed his obligation to follow the holding of Donnelly v. United Fruit Co., 40 N.J. 61 (1963).
RCA contends that (1) federal law governs the action; (2) the trial court did not apply the governing federal standards in deciding this case; (3) the controlling law requires an initial finding of "bad faith" by the union before an employee can have judicial enforcement of the contract grievance procedure, and (4) the impact of the trial court's decision creates instability in labor relations.
Plaintiff agrees that federal law applies but contends that federal law was correctly applied herein. Both sides agree that Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d *82 94, decided on February 27, 1967  subsequent to the judgment herein  expresses the controlling principles of law; and that Donnelly v. United Fruit Co., supra, to the extent that it conflicts with Vaca v. Sipes, must yield in favor of the latter's declaration of the applicable law. Plaintiff maintains that the decision of the trial court is correct and does not create instability in labor relations.
In Donnelly plaintiff sued his employer and his union for damages for wrongful discharge and for failure of defendants to process his grievance. The union, after investigation of the facts, had decided that there was no merit to plaintiff's grievance and thereupon refused to process it. Our Supreme Court affirmed a summary judgment against plaintiff. It held that an action could not be maintained against the employer for discharge of Donnelly, a union employee, in violation of the terms of the collective bargaining contract where there was no showing that the employer at any time refused "to permit pro se processing of Donnelly's claim of discharge without cause." 40 N.J., at p. 94.
Donnelly also held that a union member, as a prerequisite to any action against his union for failure and refusal to process the employee's claim of unlawful discharge in accordance with the grievance procedures, was required to show that the union acted "in bad faith" in refusing after investigation to demand that the employer proceed to arbitrate the issue of improper discharge through the steps of the grievance procedure. 40 N.J., at p. 96. As the court there stated:
"The courts cannot concern themselves with the wisdom of the union's action. The cause of union solidarity and employee morale might have been better served by adherence to the formal contract plan. But so long as the union in good faith exercised an impartial discretion in reaching its decision that there was good cause for the discharge, judicial intervention is impermissible." (Emphasis added)
Guided by this rule, the court found in Donnelly that "sufficient evidence of union bad faith toward him to justify *83 reversal of the trial court's summary judgment does not appear." Ibid. (Emphasis added).
Obviously, if Donnelly controlled herein, the trial court's finding that the union had acted "without bad faith" would seemingly preclude a judgment in plaintiff's favor.
But this test of "good faith" alone has been modified and broadened by the United States Supreme Court in Vaca. In that case plaintiff had been discharged for reasons of poor health. The union processed his grievance through the fourth step and had gone to great lengths to present to the employer medical reports supporting the employee's position. The union decided not to seek arbitration when a doctor, whose fee it had paid, supported the employer's position. The company offered plaintiff referral to a rehabilitation center, but he refused the offer and pressed his demand for arbitration when the procedure became stalled at the fourth step. The United States Supreme Court concluded that breach of the duty of fair representation had not been established.
The court in Vaca stated that, in order for an employee to bring an action against his employer under the collective bargaining agreement for wrongful discharge, the employee must prove that "the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." 386 U.S., at p. 186, 87 S.Ct., at p. 914. (Emphasis added). Thus, in passing upon an employee's right to sue, "the courts will be compelled to pass upon whether there has been a breach of the duty of fair representation." Id., at p. 187, 87 S.Ct., at p. 915. Vaca defines this duty as follows:
"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Id., at p. 190, 87 S.Ct., at p. 916.
The use of the disjunctive "or" indicates that the union's statutory duty of "fair representation" is breached if there *84 is a showing of bad faith, but it may also be breached in the absence of bad faith, if the union's conduct is shown to have been "arbitrary" or "discriminatory."
RCA argues that plaintiff did not establish a lack of "fair representation." It points to the trial court's finding that the union acted "without bad faith," and the absence of any finding that the union's conduct was arbitrary or discriminatory. It stresses that Judge Furman found only that "the Union has not adequately or did not adequately represent Mrs. Zalejko at step three or step four of the grievance procedure. So she should have that opportunity." RCA maintains that a finding of a lack of "adequate" representation cannot be equated with a finding of a lack of "fair" representation.
We are satisfied that the trial judge's use of the word "adequate" was being equated with the word "fair." He had stated earlier in his opinion:
"If I am satisfied that the grievance has been fairly and fully presented at step three and step four, I do not consider that the Court should grant specific performance of the agreement to compel arbitration. So we come down to the question has this grievance been presented fairly and fully by the Union at steps three and four." (Emphasis added)
His judgment granting specific performance indicates that the trial judge answered this question in the negative. His specific findings, as noted above, for which there is adequate evidential support, demonstrate a lack of "fair representation" by the union in presenting plaintiff's grievance.
The individual employee does not have "an absolute right" to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement. Vaca v. Sipes, 386 U.S., at p. 191, 87 S.Ct., at p. 917. "If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined * * *." Ibid. But the union must *85 "in good faith and in a non-arbitrary manner, make decisions as to the merits of particular grievances." 386 U.S., at p. 194, 87 S.Ct., at p. 919. Where it fails to do so, the courts must see to it that the individual employee is not left without a remedy.
The judgment is affirmed.