IRONBOUND COMMITTEE AGAINST TOXIC WASTE, ET. ALS., PLAINTIFFS–APPELLANTS v. BOARD OF CHOSEN FREE-HOLDERS, COUNTY OF ESSEX, NICHOLAS AMATO, COUNTY EXECUTIVE, EASTERN WASTE, INCORPORATED, AMERI-CAN REF–FUEL OF ESSEX COUNTY, DEFENDANTS–RE-SPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 9, 1988—Decided January 17, 1989.

Before Judges LONG, MUIR and KEEFE.

*Stefanie A. Brand* and *William C. Sullivan, Jr.* argued the cause for appellants (*Gordon, Gordon and Haley*, attorneys; *Timothy S. Haley*, on the brief and letter brief).

*H. Curtis Meanor*, Acting Essex County Counsel, argued the cause for the respondents, County of Essex and Nicholas R. Amato (*Norman Shulaner*, Assistant County Counsel, on the brief).

*John N. Bain* argued the cause for the respondent, intervenor, American Ref–Fuel Company of Essex County (*Carella, Byrne, Bain & Gilfillan*, attorneys; *Carl H. Rifino*, on the brief).

*Richard K. Coplon* argued the cause for the respondent, Eastern Waste, Inc. (*Hellring, Lindeman, Goldstein, Siegal, Stern & Greenberg*, attorneys; *Richard K. Coplon* on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

The ultimate issue to be decided on this appeal is whether a Process Residue Option contract between Essex County and Eastern Waste, Inc. is exempt from the provisions of the Local Public Contracts Law by reason of recent amendments to the Solid Waste Management Act. We conclude that it is exempt.

On October 7, 1987, Essex County (Essex) and Eastern Waste, Inc. (Eastern) entered into a Process Residue Option Agreement (Agreement) providing for the future disposal of residual ash and non-processable waste from the proposed Essex County Resource Recovery Facility. (Facility) The Facility is being developed pursuant to a joint venture of Essex, The Port Authority of New York and New Jersey (PA) and Ameri-

can Ref–Fuel (American). The Agreement with Eastern was not awarded on the basis of formal public bidding, but, rather, pursuant to the provisions of the Solid Waste Management Act. (Act) *N.J.S.A.* 13:1E–1 et seq. The Act is the State's comprehensive legislation regulating and controlling collection and disposal of solid waste in New Jersey. Major amendments were made to the Act in 1985 (L.1985, c. 38, *N.J.S.A.* 13:1E–136 et seq.) The amended provisions permit governmental bodies, among other things, to enter into contracts "for the design, financing, construction, operations or maintenance, or any combination thereof, of a resource recovery facility, or for the provision of resource recovery services" without the requirement for public bidding under the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 et seq. The procedures for entering into a resource recovery contract under the Act include issuance by the public body of a Request For Qualifications (RFQ) of interested vendors, *N.J.S.A.* 13:1E–154, issuance of a Request For Proposals (RFP) from qualified vendors, *N.J.S.A.* 13:1E–156, designation of most qualified vendors, *N.J.S.A.* 13–1E–157, and negotiation of a resource recovery contract, *N.J.S.A.* 13:1E–157. After a resource recovery contract is negotiated by a public body under the Act it is submitted to the State for hearing, review and approval by the Board of Public Utilities, Department of Environmental Protection and the Division of Local Government Services of the Department of Community Affairs, *N.J.S.A.* 13:1E–158–163.

In August, 1986, pursuant to the Act, Essex issued its RFQ for vendors interested in providing services for the removal and disposal of the residual incinerator ash and bypass waste to be generated at the Facility and for the reservation of landfill capacity for the resource recovery waste. The notice of the RFQ, published on August 8, September 22 and September 24, 1986, included the following provisions:

> Some or all of the companies which demonstrate their qualifications by responding to this request for qualifications (RFQ) may be invited to submit further

information possibly in response to a request for proposals (RFP) leading to a cost proposal and a negotiated agreement....

County may elect to utilize the procurement option allowed under Chapter 38 of the Laws of New Jersey of 1985, the so-called "McEnroe Process", in which proposed contracts relating to resource recovery are submitted to State agencies for review and approval.

In November, 1986, Essex issued an RFP for the resource recovery ash and bypass waste contract which included the following provisions:

State Regulations—The County's current understanding is that the proposed contract under this procurement and the negotiated rates for hauling and disposal thereunder, are subject to a one-time review and approval by the Board of Public Utilities (BPU) and by the Department of Environmental Protection and the Department of Community Affairs per the "McEnroe" legislation, Chapter 38, N.J. Laws of 1985.

Eastern submitted a statement of qualifications and interest in response to the RFQ and a proposal in response to the RFP. From November, 1986, there were continuing and extensive contract negotiations with Eastern involving hundreds of hours of time leading up to the approval of the Agreement on October 7, 1987.

Ironbound Committee against Toxic Waste, an unincorporated association, joined other named residents and taxpayers of the City of Newark (plaintiffs) and filed a complaint in lieu of prerogative writ on November 5, 1987. The first two counts of the complaint challenged the means by which the contract was negotiated. Plaintiffs alleged that Essex acted in violation of the Local Public Contracts Law, N.J.S.A. 40A–11–1 et seq. and/or the Act, N.J.S.A. 13:1E–153 to 166, by privately negotiating, rather than publicly bidding, the Agreement. Plaintiffs also contended that the defendants violated the Act by authorizing out-of-state-disposal without enacting a plan amendment.

Several counts of the complaint challenged the terms of the contract itself. For example, plaintiffs maintained that the contract was illusory and advanced two reasons for that allegation. First, plaintiffs claimed that Eastern's ability to perform its obligation, pursuant to the contract, was guaranteed only by

"commitment" letters from New York landfills reserving capacity for Eastern but not by binding agreement.

Second, plaintiffs argued that, although the Agreement becomes effective on January 1, 1990, continuing until January 1, 1997, there is no assurance that the permits for the three New York State landfills extend to 1997. In the remaining counts of the complaint, plaintiffs alleged that the execution of an illusory contract was contrary to Essex's responsibilities under the Act and that its agreement to indemnify Eastern for all liabilities, including strict liability, for any acts of Essex or its agents, was contrary to the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 et seq.

Plaintiffs moved for summary judgment on Count I of the complaint, regarding the violation of the Local Public Contracts Law, because the material facts underlying that claim were undisputed. Defendant Eastern filed a cross motion to dismiss the complaint and for summary judgment. American was granted the right to intervene. It filed a brief contending that, because the forty-five days provided in *R.* 4:69–6(a) to institute an action in lieu of prerogative writs began running in November, 1986, at the latest, when Essex published its RFP, plaintiffs' claim was time barred. Plaintiffs admitted that they were aware of the publication of the RFP in November, 1986, but denied they were aware of the publication of the RFQ's.

The trial judge agreed with American and held that plaintiffs were time barred, not only for the counts of the complaint relating to the process by which the contract was negotiated but also for those counts of the complaint which address its specific terms. Plaintiffs appealed.

■ The claims advanced by plaintiffs in this matter present an important public question. The Act is part of the Legislature's response to the solid waste disposal crisis which faces New Jersey. See, *Senate Energy and Environmental Committee Statement,* Assembly, no. 1778 L.1985, c. 38. The landfill crisis was judicially recognized in the case of *Borough*

*of Glassboro v. Gloucester County Bd.*, 100 *N.J.* 134 (1985), certif. den., 474 *U.S.* 1008, 106 *S.Ct.* 532, 88 *L.Ed.*2d 464 (1985). The Legislature found "that the State's capacity to safely dispose of Solid Waste of [sic] sanitary landfills is rapidly diminishing; that New Jersey must move away from its current reliance on landfills ... to the application of waste reduction, recycling, and energy recovery technology; ... and that these issues must be addressed as thoroughly and expeditiously as possible." *N.J.S.A.* 13:1E–136. The Legislature also found that resource recovery facilities involve high capital expenditures which require long-term financial arrangements and that public-private sector cooperative ventures are to be encouraged by the establishment of a favorable regulatory climate while assuring adequate waste disposal at just and reasonable rates. *N.J.S.A.* 13:1E–136. It declared the public policy of this State to provide a framework for the implementation of a solid waste resource recovery strategy which facilitates the orderly development of facilities while protecting the public health, safety and welfare. *Id.* In this case a question which is fundamental to the effective operation of the legislative response to the solid waste disposal crisis is at issue. The parties thrust and parry over the timeliness of the action which raised this issue. We will not address the timeliness question. Even if we were to conclude that all or a portion of plaintiffs' claim is barred we would enlarge the time in which the suit may be brought in view of the important public question involved. *R.* 4:69–6(c); *Bernstein v. Krom*, 111 *N.J.Super.* 559, 564 (App.Div.1970); *Schierstead v. Brigantine*, 29 *N.J.* 220 (1959).

Turning to the substantive issue about which the parties have no factual dispute, the Senate Energy and Environment Committee reported that, under the Act, a contracting unit such as Essex:

> may enter into a long-term contract (up to 40 years) with a private firm for the ... operation and maintenance of a resource recovery system. The procurement procedure established in this bill would constitute an alternative to any other contracting procedure now available to a local government unit.

The language of the statute specifically makes it clear that a contracting unit (Essex) may negotiate contracts (*N.J.S.A.* 13:1E–157) and that the negotiation procedures are an alternative to and can supersede all other procurement procedures. *N.J.S.A.* 13:1E–153. Notwithstanding the exemption from the requirements of the Local Public Contracts Law, the Legislature provided for public and State agency scrutiny and ultimate approval. *N.J.S.A.* 13:1E–158 to 163.

With particular reference to this Agreement, *N.J.S.A.* 13:1E–157 permits the negotiation of a contract between a "contracting unit" (Essex) and a "qualified vendor." A qualified vendor is defined as:

> any person or party financially qualified for, and technically and administratively capable of, undertaking the design, financing, construction, operation or maintenance, or any combination thereof, of a resource recovery facility or of providing resource recovery services,.... *N.J.S.A.* 13:1E–137(r).

*N.J.S.A.* 13:1E–153 authorizes a contracting unit to enter into contracts, without public bidding:

> for the design, financing, construction, operation or maintenance, or any combination thereof, of a resource recovery facility, or for the provision of resource recovery services.

The Agreement with Eastern is apparently but one part of the total integrated resource recovery package of agreements which make up the Essex–PA–American resource recovery joint venture project. The primary project documents consist of: 1) a contract between Essex and PA which generally sets forth PA's obligation to provide the major project financing and to provide for the construction and operation of the resource recovery facility for the disposal of Essex's solid waste and related matters; 2) an agreement between PA and American which generally sets forth American's obligation to construct and operate the facility and PA's obligation to finance and pay for such services; 3) a contract between American and Public Service Electric & Gas Co. for the sale of the electricity generated by the Facility, the proceeds of which are to be applied against the disposal tipping fee established under the Essex–PA agreement; and 4) the contract challenged herein

between Essex and Eastern, providing for the removal and disposal of incinerator ash and bypass waste from the Facility.

In determining whether the latter contract is encompassed by the Act we are further guided by the wording of the Act and provisions of the New Jersey Constitution. Section 14 of the Act provides that:

this act shall be liberally construed to effectuate the purpose and intent thereof.

Further, Art. 4, Sec. 7, Para. 11 of the New Jersey Constitution provides that:

the provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor...."

Our analysis of the legislative history, the wording of the statute, the context in which the subject Agreement was negotiated and executed and the standards to be applied in the interpretation of such legislation lead us to conclude that the Agreement is within the resource recovery public bidding exception of *N.J.S.A.* 13:1E–153. An essential part of the operation and maintenance of any resource recovery facility is the removal and disposal of residue and incinerator ash and bypass waste. If the ash and bypass waste are not removed, other wastes cannot be incinerated. Certainly, if Essex had entered into one contract with American for total operation and maintenance of the Facility, including the removal and disposal of ash and bypass waste, there would be no question but that the ash and bypass waste removal component would be a proper and appropriate part of the resource recovery operation and contract. The fact that Essex's joint venture resource recovery project is set forth in four integrated contracts should not be fatal to the inclusion of the fourth contract into the exempt package. Since ash and bypass waste removal are an essential component of the resource recovery operation, the contract with Eastern must be considered to be a resource recovery contract within the scope of the resource recovery exception from public bidding.

The judgment under review is reversed and the matter is remanded for resolution of all remaining issues.