274 N.J. Super. 83 (1994)
643 A.2d 52
JOHN M. FAULHABER, III, AND CAROL FAULHABER, PLAINTIFFS,
v.
TOWNSHIP COMMITTEE OF THE TOWNSHIP OF HOWELL, DEFENDANT, AND WAL-MART STORES, INC., A DELAWARE CORPORATION, DEFENDANT/INTERVENOR.
Superior Court of New Jersey, Law Division (Civil), Monmouth County.
Decided January 21, 1994.
*87 John Paul Doyle, for plaintiffs (Doyle and Cucci, attorneys).
Allen S. Kaplan, for defendant Tp. of Howell (Kaplan & Bookbinder, attorneys).
William J. Mehr, for defendant/intervenor Walmart (Mehr & LaFrance, attorneys).
Mark Williams, for defendant/intervenor landowners.
O'HAGAN, J.S.C.
This action in lieu of a prerogative writ challenges the actions taken on November 12, 1991, by the Howell Township Committee (hereinafter referred to as the "Township Committee"), in adopting an ordinance changing the zone classification of five lots from ARE-2 to Highway Development (hereinafter referred to as "HD").
The plaintiffs, who are property owners in Howell Township, contend initially that their suit filed on September 14, 1992, is timely as it was filed within forty-five days of the effective filing of the ordinance with the Monmouth County Planning Board as required by N.J.S.A. 40:55D-16. In the alternative, they contend that if the suit were not filed in a timely fashion, the interests of justice require an enlargement of the time. R. 4:69-6c.
The court, after a seven day trial, finds the right to sue accrued upon publication of the notice following the adoption of the ordinance, and that the interests of justice do not require an enlargement of time. Therefore, judgment will enter in favor of the defendants.
The lots in question are described as Lots 11, 12, 16.01 and parts of Lots 13 and 14, in Block 74 in Howell Township. Block 74 is a fifty-five acre triangular shaped property bounded by Route 9, Lanes Mill and Kent Roads. Route 9 is the major north-south *88 route through Howell Township. The roadway is divided with a concrete median divider. There is much vacant land found adjacent to Route 9, south of its intersection with Route I-195. North of that interstate roadway, the existing development along Route 9 is more established. The property involved in this law suit is located south of Route I-195. Lanes Mill Road intersects with Route 9. This intersection is one of the few intersecting roads in Howell Township allowing a motorist to turn either north or south onto Route 9. Across Lanes Mill Road from Block 74 is the Southard Elementary School. Kent Road proceeds south to the boundary with Lakewood Township in Ocean County and is bounded for the most part by lands in their undeveloped condition and by some scattered residential homes.
Until 1989, the triangular shaped parcel was zoned so that only a small portion allowed commercial development. The Highway Commercial zone (hereinafter referred to as "HC"), which up until that point was the predominant commercial zone in Howell Township, allowed small commercial uses on relatively small lots. The development resulting from HC zoning was characterized by isolated commercial uses or strip stores scattered along the highway frontage. There was no significant impediment in the requirements for the HC zone which limited or restricted access of motorists onto Route 9.
The New Jersey Department of Transportation, in the late 1980's, finished the construction dualizing Route 9 throughout its entire length in Howell Township. In 1988, more or less coincident with the completion of construction on Route 9, for the first time in its Master Plan, the Township created the concept of HD zoning. The conceptual HD zone plan required larger lots than the HC zone and as described by the planner at trial limited or restricted points of access to Route 9. Additionally, it required significant setbacks from the highway and intersecting streets. The thrust or purpose of the HD zoning described in the master plan was to attract a variety of creative, larger commercial and office uses.
*89 The land use map included within the 1988 Master Plan depicted only a small portion of Block 74 as an HD zone, basically following the lines of the earlier HC zone. The balance of lands within the triangle were depicted on the land use map as ARE-2, an agricultural zone which allowed single family residences on lots of two acres. Across Kent Road all of the property was designated to be zoned ARE-2.
In 1989, the Township Committee adopted the zoning ordinance to effectuate the master plan and zoned a much larger portion of block 74 as HD, leaving only the five lots now at issue which measure a total of five acres as ARE-2. The lot lines created in the 1989 zoning ordinance resulted in a portion of two lots being zoned partially HD and the balance ARE-2, thus creating split lots. Other lots were undersized as compared with the requirements of ARE-2. It was established at trial that absent the expanded dimensions of this zoning district line in 1989 in the area of this triangular shaped property, development could not have gone forward and been in compliance with the requirements of the HD zone.
In the summer of 1991, Wal-Mart became interested in developing a store within the triangular area, but advised there was a need to zone the remaining five lots as HD before it could go forward with development plans, as four of the lots zoned ARE-2 comprised a portion of the property it wished to purchase.
The Township Committee was most interested to attract Wal-Mart to Howell Township. The actions taken by Howell Township in the summer and fall of 1991, which led to the amendment of the zoning ordinance are the actions now under attack by the plaintiffs.
The plaintiffs contend that in the committee's haste to attract a large regional development it violated the Open Public Meetings Act. The plaintiffs further contend that the committee attempted to avoid public scrutiny and knowledge of its actions by scheduling the discussions and actions regarding the ordinance *90 very late in its meeting, after much other business had been resolved, and even then, failed to disclose the interest of Wal-Mart. Moreover, they allege that the committee carried out their intentions by adopting an allegedly deficient ordinance that did not sufficiently inform members of the public of its real intention. Further, the plaintiffs assert that the former mayor was so biased in favor of Wal-Mart that she caused the Township Committee to take action in a rushed, improper fashion, therefore, resulting in the requirements of law not being honored. As well, the plaintiffs contend that the ordinance is not consistent with the master plan and is the product of both improper spot zoning and fiscal zoning.
The plaintiffs argue that considered separately or together, the grounds alleged above are sufficient to cause the court to enlarge the time to file suit. Relying on the same grounds, the plaintiffs argue that should the time be enlarged, the ordinance must be set aside.
R. 4:69-6 requires that actions challenging a zoning ordinance be brought within forty-five days after the accrual of the right to review a zoning ordinance. The right to review a zoning ordinance, as will be hereafter noted, begins upon publication of a notice after its adoption on second reading. N.J.S.A. 40:49-2. Here the ordinance was introduced by the Township Committee on September 16, 1991, and adopted on November 12, 1991. The notice in question was published on November 15, 1991, in the Asbury Park Press. This suit was filed in September of 1992, and consequently far outside the forty-five days.
The court, however, has the authority to enlarge time to bring suit "where it is manifest the interest of justice so requires." R. 4:69-6c. The time may be enlarged only when exceptional circumstances exist and upon the most persuasive of grounds. Robbins v. Jersey City, 23 N.J. 229, 238, 128 A.2d 673 (1957).
There are competing interests that are involved and bear upon the issue of enlarging the time to bring suit. On the one hand, there is a need of certainty and finality to actions taken by *91 governmental agencies. Additionally, the rule is designed to encourage parties not to rest on their rights. Reilly v. Brice, 109 N.J. 555, 559, 538 A.2d 362 (1988); Schack v. Trimble, 28 N.J. 40, 49, 145 A.2d 1 (1958). This has been described as a policy of repose. Reilly, supra, 109 N.J. at 559, 538 A.2d 362; Wash. Tp. Zon. Bd. v. Planning Bd., 217 N.J. Super. 215, 225, 525 A.2d 331 (App.Div. 1987). It must be remembered, governing officials are conducting the public's business, not their own personal affairs. Citizens have the right to rely upon actions taken by public officials in the planning and carrying on of their own affairs. Therefore, the public has the right to expect that any legal challenge to actions taken will be pursued in an expeditious fashion. On the other hand, an individual may be seriously aggrieved as the result of actions taken by public officials. In many circumstances, such an individual has the right to expect that a court will adjudicate his or her claim of unlawful action on the part of public officials.
There are three basic grounds recognized by the court concerning when the time to sue will be enlarged, namely, when a substantial and novel constitutional issue is involved (Schack, supra, 28 N.J. at 47, 145 A.2d 1; when certain informal or ex parte determinations are made by administrative officers, without "a sufficient crystallization of a dispute along firm lines" (id. at 49-50, 145 A.2d 1; see also, Reilly, supra, 109 N.J. at 559, 538 A.2d 362); or when an important public, rather than private, question requires clarification or adjudication (see Brunetti v. Borough of New Milford, 68 N.J. 576, 585-87, 350 A.2d 19 (1975) (citations omitted); Pressler, Current NJ Court Rules, comment on R. 4:69-6 (1994). Clearly, only the last ground has any possible application to the facts of this case.
Courts have enlarged the time when the public notice of the actions taken by the governing body evidences, after investigation, an intent to mislead the public by materially misdescribing a contract it had negotiated with its former police chief (Reilly, supra, 109 N.J. 555, 538 A.2d 362); when a zoning ordinance *92 impacted upon 80% of the undeveloped land within a municipality (Wolf v. Shrewsbury, 182 N.J. Super. 289, 440 A.2d 1150 (App.Div. 1981), certif. den., 89 N.J. 440, 446 A.2d 162 (1982)); when a dispute involved a county-wide issue regarding disposal of solid waste (Ironbound Com. v. Chosen Freeholders, 230 N.J. Super. 133, 553 A.2d 30 (App.Div. 1989), certif. den., 117 N.J. 64, 563 A.2d 828 (1989)); when a challenge was made as to the right of a municipal utilities authority to charge uniform sewer rates to each of its users (Reahl v. Randolph Tp. Municipal Util. Auth., 163 N.J. Super. 501, 395 A.2d 241 (App.Div. 1978), certif. den., 81 N.J. 45, 404 A.2d 1146 (1779)); when a challenge was made to a rent control ordinance affecting tenants throughout a municipality (Wayne Tenants Council v. Wayne Tp., 180 N.J. Super. 128, 433 A.2d 844 (Law Div. 1981)); when the public notice failed to sufficiently inform residents that an amendment to the zoning ordinance affected zones throughout a municipality (Masnick et al. v. Mayor & Council of Cedar Grove Tp., 99 N.J. Super. 436, 240 A.2d 192 (Law Div. 1968)).
On the other hand, the time was not enlarged where a planning board granted a use variance to an applicant even though it had no statutory authority to do so. Wash. Tp. Zon. Bd., supra, 217 N.J. Super. 215, 525 A.2d 331. Nor was the time enlarged where it was alleged that the defendant was elected to the position of councilman even though he did not reside within the municipality, and thus, did not have the lawful right to stand for election. Haack v. Ranieri, 83 N.J. Super. 526, 538-40, 200 A.2d 522 (Law Div. 1964).
As earlier indicated, the plaintiffs contend that the time must be enlarged because of alleged procedural deficiencies and/or substantive violations of the law that were so pervasive and wrong that justice can only be served if the actions taken by the governing body are set aside. However, after extensive testimony and argument, the plaintiffs have failed to establish that the Township Committee violated the Open Public Meetings Act. N.J.S.A. 10:4-6 to -21. To prevail on this charge, the plaintiffs *93 must establish a violation of the Act. In particular, plaintiffs must prove the Township violated N.J.S.A. 10:4-9 or N.J.S.A. 10:4-12, which require all meetings of the Township Committee to be open to the public. Mere innuendo, or inference, of a possible violation of the law is not sufficient. First Peoples Bank v. Medford Tp., 126 N.J. 413, 418-19, 599 A.2d 1248 (1991); Thornton v. Village of Ridgewood, 17 N.J. 499, 513, 111 A.2d 899 (1955). In determining whether a violation of the Act has occurred, the court should not approach the issue with a skeptical or critical eye. First Peoples Bank, supra, 126 N.J. at 418-19, 599 A.2d 1248; Rice v. Union County Regional High School Bd. of Ed., 155 N.J. Super. 64, 382 A.2d 386 (App.Div. 1977), certif. den., 76 N.J. 238, 386 A.2d 863 (1978); N.J.S.A. 10:4-21. Nor should the court ascribe improper motives to any inappropriate word or slip of the tongue on the part of the governing body or its members. If an inappropriate word or slip of the tongue is reasonably or logically explained, the court should not hesitate to uphold otherwise lawful action. See Riggs v. Long Beach Tp., 109 N.J. 601, 610-11, 538 A.2d 808 (1988); First Peoples Bank, supra, 126 N.J. at 418-19, 599 A.2d 1248; Bow & Arrow Manor, Inc. v. Town of W. Orange, 63 N.J. 335, 343, 307 A.2d 563 (1973). Finally, it must be noted that even if there were improper non-public discussions in violation of the Open Public Meetings Act, those discussions, in the context of this case, were made public when the ordinance was introduced and adopted. N.J.S.A. 10:4-15, LaFronz v. Weehawken Board of Ed., 164 N.J. Super. 5, 395 A.2d 538 (App.Div. 1978), certif. den., 79 N.J. 491, 401 A.2d 246 (1979); Whispering Woods v. Middletown Tp., 220 N.J. Super. 161, 174, 531 A.2d 770 (Law Div. 1987). Consequently, there is no basis for the court to enlarge the time as the result of an alleged violation of the Open Public Meetings Act on the part of the Township Committee.
As to the plaintiffs' contentions regarding the timing of actions taken by the governing body in the course of its regularly scheduled meeting, the court finds them to be without merit. Assuming the statutory requirements have been met, it is not for *94 the court to direct when and how the governing body should conduct its business. Bow & Arrow Manor, supra, 63 N.J. at 343, 307 A.2d 563. Rather, the order in which matters are to be resolved is entirely within the control of the governing body. Ibid. The court notes that the meetings of the Township Committee were lengthy and much business was conducted. In that light it would be unfair and inappropriate for the court to evaluate the committee's actions with the benefit of hindsight. Ibid.; Kozesnik v. Montgomery Tp., 24 N.J. 154, 167, 131 A.2d 1 (1957). For all the court knows, other items on the agenda were equally important to residents of Howell Township.
The plaintiffs' contentions regarding an attempt by the Township Committee to mislead the public by neglecting to mention Wal-Mart in the body of the ordinance, or in discussions when the ordinance was considered, are without merit. The contents of the ordinance satisfied the requirements of the Municipal Land Use Law. N.J.S.A. 40:55D-65, additionally, the procedural requirements for passage of the ordinance were satisfied. N.J.S.A. 40:49-2. As long as the wording of an ordinance is reasonably clear and unlikely to mislead an interested member of the public, the court should not take judicial action merely because the ordinance could be more explicit, or because the court might have written it differently. Bow & Arrow Manor, supra, 63 N.J. at 343, 307 A.2d 563; Kozesnik, supra, 24 N.J. at 167, 131 A.2d 1; Vickers v. Tp. Com. of Glouster Tp., 37 N.J. 232, 242, 181 A.2d 129 (1962), certif. den., and app. dism., 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 495 (1963).
The plaintiffs' arguments regarding bias on the part of the former mayor in favor of Wal-Mart fall far short of establishing any improper conduct by the mayor or Wal-Mart. There is no question that the former mayor believed Wal-Mart would benefit residents of Howell Township. Similarly, there is no doubt she expressed in public her views that Howell Township should take steps in an expeditious fashion so that Wal-Mart might locate its business within the triangular shaped parcel on Route 9. In the *95 absence of established improper conduct, however, the court cannot and should not overturn the actions of the governing body merely because one or more of its members holds strong views and urges expeditious action on the part of the governing body. See Bow & Arrow Manor, supra, 63 N.J. at 343, 307 A.2d 563. In the absence of proven improper conduct, the court should take no action to set aside an ordinance merely because the motives of the governing body, or its members, do not accord with the court's perception of what is appropriate. Ibid; Vickers, supra, 37 N.J. at 242, 181 A.2d 129.
The plaintiffs also argue that the ordinance is inconsistent with the 1988 master plan, and since the Township did not adopt an inconsistency resolution as required by law, N.J.S.A. 40:55D-62, or amend the master plan, N.J.S.A. 40:55D-28, the ordinance is invalid. Therefore, they contend that the time to file suit should be enlarged. In this respect, the plaintiffs rely upon the land use map included within the 1988 master plan, contending that the map was "lot specific." The plaintiffs offer the testimony of John Chadwick who established at the trial that he was the planner for Howell Township in 1988 when the master plan was adopted. The planner testified at great length that district lines were drawn on the map, after extensive public hearings, with the view that the lines were to be lot specific. Therefore, the plaintiffs argue that since the 1988 master plan only designated a limited area of Block 74 to be HD, the Township Committee did not have the authority to zone the five lots in question as HD without adopting a resolution explaining the ordinance's inconsistency with the master plan. N.J.S.A. 40:55D-62.
Even if this argument were based on law, however, the court does not have the authority, in the context of this case, to enlarge the time to file suit. In this respect it is important to note that the ordinance only impacted upon a limited geographic area. Wash. Tp. Zon. Bd., supra, 217 N.J. Super. at 218-20, 525 A.2d 331; Wolf, supra, 182 N.J. Super. 289, 440 A.2d 1150. If approached from the viewpoint of the ordinance's impact upon the *96 ARE-2 zone, it is clear that a private, as opposed to public, issue is involved. Clearly, in that respect the mere inconsistency of a zoning ordinance with the master plan does not require the enlargement of time to bring suit. Urban v. Planning Board, 124 N.J. 651, 662, 592 A.2d 240 (1991). If examined from the perspective of the nearby Southard School situated across Lanes Mill Road from Block 74, the court notes that the 1991 ordinance only served to expand the frontage of the HD district line further along Lanes Mill Road. Prior to adoption of the 1991 ordinance, the majority of that frontage had already been zoned HD. Thus, from the court's perspective, even if an inconsistency with the master plan exists, in the circumstances of this case, it does not require the enlargement of time to bring suit.
Approached from a different perspective, it is not even clear that the ordinance was in fact inconsistent with the master plan. Initially the court notes that the map, thought to have such significance by the plaintiffs, is only a part of the land use and development proposal within the master plan. N.J.S.A. 40:55D-28(b). At the trial the planners retained by the Township and Wal-Mart testified that in their experience, the map is not considered to be lot specific, but rather is to serve as a guide recognizing that the zone district line may be blurred at the boundaries between two zones. When it comes time to adopt a zoning ordinance, the district line may be moved, thus shifting the boundary. On the other hand, the plaintiffs' planner, as earlier noted, opined the map was intended to be lot specific. The court notes, however, that he served as the Township planner in 1989 when the zoning ordinance was adopted providing that all but five lots within block 74 were to be zoned HD.
Contrary to the plaintiffs' assertions, there is no provision in N.J.S.A. 40:55D-28 which provides that the map is intended to be lot specific. Nor is there any provision that states the map is to control when a fair reading of the land use plan element suggests that the zone district line is to be more expansive than as depicted on the map. An elementary requirement of judicial *97 construction requires consideration of the entirety of a document when a specific provision is to be interpreted. See Newark Publishers' Assn. v. Newark Typographical Union, 22 N.J. 419, 426-27, 126 A.2d 348 (1956). Further, the entirety of the Master Plan is intended to guide the use of lands within the municipality. N.J.S.A. 40:55D-28(a); Cervase v. Kawaida Towers, Inc., 124 N.J. Super. 547, 308 A.2d 47 (Law and Chan. Div. 1973), affd, 129 N.J. Super. 124, 322 A.2d 477 (App.Div. 1974). On the other hand, zoning ordinances are intended to be lot specific. Id. at 567-68, 308 A.2d 47. It is for that reason that the Legislature required that a zoning ordinance should either be substantially consistent with the land use plan element of the master plan, or be designed to effectuate the land use plan element. N.J.S.A. 40:55D-62(a). Clearly, if the map within the master plan were to be considered lot specific, there would be no need for a comparison between the zoning ordinance and the map as the map would control.
It is clear, upon a reading of the master plan, that in providing for HD zoning, Howell Township sought to attract an entirely different kind of development than that historically built within the Township along Route 9, given the requirements for larger lots, restricted access to Route 9, and greater setbacks. Obviously the purpose underlying the concept of the HD zone must be considered in determining whether or not the ordinance is consistent with the plan. Riggs, supra, 109 N.J. at 611, 538 A.2d 808 (discussing N.J.S.A. 40:55D-1-130.) There is sufficient support in the Master Plan to allow an expansion of the HD zone to encompass the five lots in question. Finally, as earlier noted, the dimensions of the proposed HD zone depicted on the master plan lot were insufficient to allow the construction and operation of the kind of use sought to be attracted. Clearly, this suggests that the plaintiffs' reliance upon the specific dimensions of lot boundaries on the map is misplaced.
In interpreting actions taken by a governmental body, the court must assume that Township officials knew what they were doing. See Fischer v. Bedminster Tp., Somerset County, 21 *98 N.J. Super. 81, 90 A.2d 757 (1952), aff'd 11 N.J. 194, 93 A.2d 378 (1952); Bow & Arrow Manor, supra, 63 N.J. at 342-45, 307 A.2d 563. It makes no sense for the court to find that municipal officials sought to fix a boundary line when the development contemplated by the zoning requirements could not be physically located within the confines of that portion of block 74 designed as HD. Place v. Board of Adjustment of Borough of Saddle River, 42 N.J. 324, 328, 200 A.2d 601 (1964). In other words, the court should strain to interpret municipal action in such a manner as to carry out its stated purpose. See Riggs, supra, 109 N.J. at 610-11, 538 A.2d 808. As earlier noted, Block 74 is bounded by roads on all sides. Contrary to plaintiffs' assertions, the 1991 ordinance did not constitute spot zoning, but rather, was a step consistent with good planning to zone the five lots, which themselves in part were non-conforming, in such a way as to be identical with all other land within the triangular shaped parcel.
The plaintiffs contend that its suit was timely as it was filed on the forty-fifth day following the Township's filing of the ordinance with the Monmouth County Planning Board as required by N.J.S.A. 40:55D-16. That statute provides a zoning ordinance shall not take effect until a copy is filed with the County Planning Board. The court, however, as earlier noted finds that the right to institute suit begins with the publication of the notice advising of the adoption of the ordinance even though the ordinance had not yet been filed as required by N.J.S.A. 40:55D-16.
In the first instance, the time limits in which suit must be instituted are set forth in the Court Rules, not the state statutes. Courts and not the Legislature were given the power in the State Constitution to regulate proceedings in lieu of prerogative writs. N.J.Const. art. VI, § 5, ¶ 4.
It is self evident that the publication of the notice of passage of an ordinance in the newspaper after adoption of the ordinance is designed to be a public notice to all interested parties of actions taken by the governing body. There is consequently a clear cut date when interested persons are presumed to have knowledge of *99 the passage of the ordinance. On the other hand, the filing of the ordinance with the County Planning Board is not public. To the contrary, no notice need be given concerning the date of filing of the ordinance. If the right to sue accrued from the filing of the ordinance, interested parties would have to independently verify, on a constant basis, the date of filing. Accordingly, the potential for problems and lack of precision as to the issue of notice are obvious.
It is, therefore, clear that the requirement for filing of the ordinance with the County Planning Board has nothing to do with notice to the public or, indeed, the right of interested parties to bring suit. Among other reasons, ordinances must be filed with the County Planning Board because the Planning Board is the central repository of all development regulations and ordinances adopted by municipalities throughout the county. Upon request, the secretary of the County Planning Board shall make available to a requesting party true copies of any such development regulations ordinance. N.J.S.A. 40:55D-16. Further, the County Planning Board has planning responsibilities of its own. See N.J.S.A. 40:27-1 to -8. The County Planning Board interacts with state and regional planning authorities. Among the responsibilities of the County Planning Board is the requirement to comment to municipalities when a zoning ordinance provides development opportunities contrary to the county's plan for development. N.J.S.A. 40:27-2. For these reasons, the legislation required the filing of the ordinance with the County Planning Board. To ensure compliance, the ordinance will not be effective until filed. N.J.S.A. 40:55D-16. Therefore, the purpose of filing the ordinance with the County Planning Board serves functions other than notice to the public.
The balance of the plaintiffs' arguments are clearly without merit. Similarly, the contentions of the defendant Wal-Mart on principles of laches and equitable estoppel are without merit in the context of this case.
*100 For the reasons noted above, the court finds that the time to institute suit commenced upon publication of the notice following the adoption of the ordinance, not upon the Township's filing of the ordinance with the County Planning Board, and further, that the interests of justice do not require the enlargement of time to file suit.