703 A.2d 1020

LAKEWOOD CITIZENS FOR INTEGRITY IN GOVERNMENT, INC., A N.J. NONPROFIT CORPORATION, PLAINTIFF, AND VINCENT BLASCO, JOSE RIVAS, SAMUEL KRAUSE, RONALD P. MASSARI, DEAN COFONE AND PATRICK HYNES, PLAINTIFF–INTERVENORS, v. LAKEWOOD TOWNSHIP COMMITTEE, TOWNSHIP OF LAKEWOOD, GREGORY C. FEHRENBACH AND COUNTY OF OCEAN, DEFENDANTS.

DAVID SIMPSON, PLAINTIFF, v. TOWNSHIP OF LAKEWOOD, BERNADETTE WORK, RICHARD WORK, JOSE ALONSO AND GREGORY FEHRENBACK, DEFENDANTS.

Superior Court of New Jersey
Law Division
Ocean County

Decided July 7, 1997.

*Joseph Pinizzotto* for plaintiff.

*Bernard F. Boglioli* for plaintiff-intervenors (*Boglioli, O'Mara & Mirra,* attorneys).

*Steven Secare* for defendants Lakewood Township Committee and Gregory C. Fehrenbach (*Russo, Secare, Ford, Delanoy & Martino,* attorneys).

*Steven F. Nemeth* for defendant County of Ocean (*Berry, Kagan, Sahradnik & Kotzas,* attorneys) (did not participate).

SERPENTELLI, A.J.S.C.

This Action In Lieu of Prerogative Writs arises from the Lakewood Township Committee's decision to transfer the local Uniform Construction Code (UCC) enforcement duties to the County of Ocean pursuant to an Interlocal Services Agreement, *N.J.S.A.* 40:8A–1 to –11. In the process of making that decision

the Committee created a novel legal issue involving fundamental tenets of the Open Public Meetings Act, *N.J.S.A.* 10:4–6 to –21 (OPMA). Can a governing body take formal action at a session denominated as a "conference" meeting when that meeting has been advertised in the same manner as regular meetings are advertised in an annual notice adopted pursuant to *N.J.S.A.* 10:4–18?

On January 11, 1996, the Lakewood Township Committee (Committee), introduced an ordinance at a regular meeting authorizing the execution of an Interlocal Services Agreement with Ocean County for the transfer of the UCC services to the County. A second reading of the ordinance occurred at a regular meeting of the Committee on January 25, 1996. However, due to a concern that the proposed contract had not been made available for public inspection, the Committee decided to treat the January 25, 1996 reading as a first reading of the ordinance and scheduled a second reading for the next regular meeting on February 8, 1996.

Sometime after January 25, 1996, the Township Attorney determined that the proper method to authorize the execution of the agreement was by resolution, not ordinance. Thereafter, on February 1, 1996, at a conference meeting, the Committee adopted the resolution authorizing the execution of the Interlocal Services Agreement.

On March 4, 1996, plaintiff, Lakewood Citizens for Integrity in Government, Inc., commenced the present action seeking to have the resolution declared void. In addition, by way of an Order to Show Cause, plaintiff sought to restrain any further action by the Committee to transfer the UCC functions to Ocean County. On March 19, 1996, the court found that plaintiff did not meet the requisite standards for the granting of a temporary injunction. On March 29, 1996, the court entered an order allowing several members of the Township Inspection Department to intervene as party-plaintiffs and granted their application to restrain the Township of Lakewood from transferring the UCC functions until further order of the court.

On April 1, 1996, at a special meeting, the Committee passed another resolution, presumably curative, to transfer the UCC duties to Ocean County. Defendants subsequently sought to have the existing restraints dissolved. However, this court denied that application.

The case was tried in November and December of 1996. Plaintiff-intervenors and defendants submitted post trial briefs.[1] Pursuant to an inquiry from this court regarding the issue of whether the above noted committee meetings were held in accordance with the OPMA, both parties submitted additional briefs addressing that subject. Subsequently, the court allowed the parties to present supplemental testimony and post trial briefs concerning the OPMA question. While there are many issues pending as a result of the lengthy trial, this opinion is limited to the OPMA compliance matters.

At its annual reorganization meeting held on January 1, 1996, in keeping with a practice followed over many years, the Committee adopted two resolutions concerning the meetings which it intended to hold throughout the year. The first resolution read, in part:

The second and fourth Thursday of each month shall be designated the days the Township Committee Meetings are to be hold [sic] at 8:00 O'Clock PM in the Municipal Building, 231 Third Street, Lakewood, New Jersey 00701. [sic]

A listing of the specific dates followed.

The second resolution provided, in part:

The first and third Thursday of each month shall be designated the days the Township Committee Conference Meetings are to be held at 8:00 O'Clock PM in the Municipal Building, 231 Third Street, Lakewood, New Jersey 08701.

Again, the specific dates of the meetings were set forth in the resolution.

At the supplemental court hearing on May 15, 1997, the Township Attorney testified that it is the Committee's practice to conduct most of its formal business on the second and fourth

---

[1] All references to "defendants" in the opinion are to the Township of Lakewood and Gregory Fehrenbach. The County of Ocean did not participate in the trial or post-trial proceedings.

Thursdays of each month. However, he also asserted that, from time to time, formal action is taken at the meetings denominated as "conference" meetings held on the first and third Thursdays.

The Township Attorney stated that the regular meetings are held in a large room which accommodates approximately 200 people. Public participation is permitted in accordance with the OPMA and the meetings are, in every sense, formal meetings conducted pursuant to that Act. The conference meetings are held in a smaller room which accommodates approximately 60 people. Most of the business transacted during these sessions is in the nature of a "workshop" or discussion of issues which are to be addressed at the regular meetings held on the second and fourth Thursdays. No public participation is permitted although members of the public can observe the proceedings.

As noted earlier, the resolution which authorized the execution of an Interlocal Services Agreement was adopted at a conference meeting. Plaintiff-intervenors allege that the resolution is illegal since formal action cannot be taken at a conference meeting. The Township asserts that the conference meeting was properly advertised by virtue of its annual notice and its long standing practice to take formal action at any of its Thursday meetings.

*N.J.S.A.* 10:4–18 provides, in part:

At least once each year, within 7 days following the annual organization or reorganization meeting of a public body ..., every public body shall post and maintain posted throughout the year in the place described in subsection 3.d.(1), (footnote omitted) mail to the newspapers described in subsection 3.d.(2), submit to the persons described in subsection 3.d.(3), for the purpose of public inspection a schedule of the regular meetings of the public body to be held during the succeeding year. Such schedule shall contain the location of each meeting to the extent it is known, and the time and date of each meeting. In the event that such schedule is thereafter revised, the public body, within 7 days following such revision, shall post, mail and submit such revision in the manner described above.

The OPMA does not define the term "regular meeting" and it does not even refer to the term "conference meeting". Provision is made for emergency meetings which may be held in compliance with *N.J.S.A.* 10:4–9(b). However, the word "emergency" is not expressly used in the statute. Any other meeting which is not

advertised in the annual notice or held as an emergency meeting can only be convened if adequate notice is given in accordance with the provisions of *N.J.S.A.* 10:4–8(d). These meetings are commonly called "special meetings" although again, the Act does not contain a definition of a "special meeting".

In determining the Committee's right to take formal action at a conference meeting, it is important to focus on the purposes of the OPMA. In the adoption of the OPMA the Legislature made specific findings and declarations with respect to the spirit and intent of the Act. Thus, *N.J.S.A.* 10:4–7 reads, in part:

> The Legislature finds and declares that the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies, is vital to the enhancement and proper functioning of the democratic process; that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society. . . .

The court is enjoined to avoid any interpretation of the Act which would subvert the right of public access to meetings, undermine public confidence in bodies which govern it, or in any way undo the noble goals of the "Sunshine Law". *N.J.S.A.* 10:4–21; *Polillo v. Deane,* 74 *N.J.* 562, 578, 379 *A.*2d 211 (1977). In *Rice v. Union County Regional High School Board of Education,* 155 *N.J.Super.* 64, 70, 382 *A.*2d 386 (App.Div.1977), *certif. denied,* 76 *N.J.* 238, 386 *A.*2d 863 (1978), the court described the statute as being:

> [I]n keeping with strong present-day policies 'favoring public involvement in almost every aspect of government.' (citing *Polillo,* at 569 [379 *A.*2d 211]) This legislation is to be liberally construed, *N.J.S.A.* 10:4–21, and 'strict adherence to the letter of the law is required in considering whether a violation of the act has occurred.' (Citation omitted).
>
> It necessarily follows that any exception from the full public disclosure mandated by the statute is to be strictly construed. (citations omitted).

*See also, Jenkins v. Newark Board of Education,* 166 *N.J.Super.* 357, 399 *A.*2d 1034 (Law Div.1979) *aff'd,* 166 *N.J.Super.* 300, 399 *A.*2d 1005 (App.Div.1979).

Unquestionably, the objectives of the OPMA are to give full access to all public meetings of governmental bodies and to

protect against secrecy in public affairs. *Crifasi v. Governing Body of Oakland,* 156 *N.J.Super.* 182, 383 *A.*2d 736 (App.Div. 1978). Any failure to abide by the dictates of the OPMA cannot be overlooked. The statute's overriding design of insuring "government of the people" is too vital. *Polillo, supra,* at 570–71, 379 *A.*2d 211.

■ With these principles in mind, can the Committee's practice of taking formal action at conference meetings be sustained? It is to be noted that the first resolution quoted above characterizes the meetings on the second and fourth Thursdays as "the Township Committee Meetings". It does not use the terms "regular" or "formal" or any other words to describe the difference between those meetings and the "Conference Meetings" held on the first and third Thursdays.[2] It could be argued that the phrase "*the* Township Committee Meetings" (emphasis added) in the resolution for the second and fourth Thursdays implies that these are *the only meetings* at which the Committee takes formal action. That suggestion would be fortified if the reader thereafter read the resolution establishing the "conference meeting" dates. Both resolutions were published together.

The resolutions adopted at the reorganization meeting for both the regular and conference meetings did not contain any statement as to whether formal action would be taken at either type of meeting. It is acknowledged that the statute does not require the annual notice of meetings to contain any statement regarding formal action. *N.J.S.A.* 10:4–18. However, by adopting two separate resolutions, the Township clearly conveyed the impression that the meetings held on the second and fourth Thursdays were for a different purpose than those held on the first and third Thursdays. The use of the term "conference meetings" strongly

---

[2] For the purpose of this opinion, the meetings designated only as "Township Committee Meetings" are described as regular meetings. That term was frequently used throughout the trial, in all the briefs, and is in common usage both in the literature and in practice.

suggests that the Committee was to meet on the first and third Thursdays for the purpose of discussing and planning formal action to be taken at its regular meetings. Indeed, as previously mentioned, the Township Attorney referred to the conference meetings as "workshop sessions". Furthermore, he noted that the conference meetings are held in a smaller room because of the limited public attendance at those sessions. By contrast, the regular meetings are held in a room which can accommodate approximately 200 people.

If there is to be no distinction between the business which may be transacted at the regular and conference meetings, it must be asked why the Committee did not publish a single notice advising the public that it met on the first four Thursdays of each month. Or, alternatively, the Committee could have expressly provided in its notice of conference meetings that it reserved the right to take formal action on matters coming before it during those meetings.

The Township argues that residents who regularly attended the conference meetings are well aware of the fact that formal action is occasionally taken at those meetings. However, that argument begs the question. New residents of the Township, those who do not regularly attend meetings, non-residents who may have an interest in only specific issues and many other persons would not be on notice of the procedure adopted by the governing body.

The evil inherent in the Township's system is demonstrated by the fact that the meetings at which the proposed ordinance was introduced on January 11, 1996 (a regular meeting date) and then reintroduced on January 25 (a regular meeting date), attracted large numbers of people. In particular, the January 25 meeting was attended by an overflow crowd since that was the scheduled date for final reading and public participation. At that time, all those in attendance were advised that the ordinance was being reintroduced on first reading at that meeting and a second reading and public hearing would take place on February 8 (again, a regular meeting date). However, in the interim, the Township learned of its right to take formal action by resolution and did so

at the conference meeting of February 1, 1996, in the small conference room in the presence of far fewer members of the public. Additionally, no public participation was permitted. While the Township correctly argues that no participation is *required* with regard to a resolution, it is hard to comprehend why the governing body chose to act without public comment given the intense public interest.

Whether justified or not, it is easy to understand how the average citizen would conclude that the Committee was looking for a way to avoid participation or notice and to stifle knowledge of its intended action. That conclusion may not be correct or fair but, given the level of distrust and cynicism of government and public officials which is extant in our society, it is a reaction which could be predicted. The inference is magnified by the fact that when the Committee reintroduced the ordinance authorizing the execution of the agreement at the regular meeting of January 25, 1996, it announced it would have a second reading and public hearing at the next regular meeting on February 8. Notwithstanding that public notice, it proceeded to take formal action at the February 1 conference meeting. It could be argued that this conduct alone should invalidate the resolution for certainly it can be expected that some prospective participants were lulled into believing they would have their opportunity to be heard on February 8. That right was cut off without even a notice of a special meeting.

However, in the court's view, the deficiency in the procedures followed here are more basic than the misleading announcement which occurred on January 25. Rather, the groundwork for the problem was laid at the reorganization meeting held on January 1, 1996, when the Committee chose to adopt two resolutions concerning the meetings, it intended to hold throughout the year, without clearly informing the public that formal action could be taken at all of those meetings. Compliance with the intent and spirit of the OPMA required it to do so.

In short, if the procedure utilized by the Committee is to be sustained, a major loophole is created within the OPMA which

would allow public bodies to avoid the light of public exposure through creative notification. The legislative statement cited earlier together with the myriad of judicial authority discussing the exemplary purposes of the Sunshine Law and the need for an expansive reading of its provisions can hardly support such a result. Thus, the formal action taken on the resolution at the conference meeting of February 1, 1996, must be invalidated.

■ As previously stated, the purpose of the OPMA is to give full access to all public meetings of governing bodies and to protect against secrecy in public affairs. *N.J.S.A.* 10:4–7; *Crifasi, supra.* However, by adopting *N.J.S.A.* 10:4–15(a) and allowing for remedial action, the Legislature provided a means to balance the rights of an informed citizenry against the need of government to function efficiently. *Houman v. Mayor and Council of Borough of Pompton Lakes,* 155 *N.J.Super.* 129, 162–63, 382 *A.*2d 413 (Law Div.1977). As noted earlier, the Committee met on April 1, 1996 at a special meeting and passed a resolution authorizing the transfer of UCC duties to Ocean County. The resolution was intended to be curative of any defects which may have been created by the adoption of the resolution on February 1, 1996. However, the plaintiff-intervenors assert that the notice of the special meeting of April 1, 1996, was defective because the Township failed to provide adequate notice, in that it did not furnish written advance notice of at least 48 hours of the special meeting in compliance with the provisions of *N.J.S.A.* 10:4–8(d).

The issue is whether, as the defendants argue, it is sufficient merely to deliver the notice to at least two newspapers 48 hours before the meeting or whether it must be delivered to two newspapers in time to permit those newspapers to publish the notice 48 hours before the meeting. Neither party contends that actual publication must have taken place 48 hours before the meeting.

Counsel for the Township stipulated during oral argument on April 10, 1996, that notice was provided to the Asbury Park Press, Tri–Town News and Ocean County's Observer by facsimile trans-

mission on Friday, March 29, 1996. He further agreed that the Asbury Park Press is published daily, that the Tri-Town News is published weekly and the Ocean County's Observer is published Monday through Friday and on Sunday. He acknowledged that the notice would not have reached the Tri-Town News or the Ocean County's Observer in time to be published 48 hours before the meeting of April 1, 1996.[3]

There is no appellate authority on point. However, the decision in *Worts v. Upper Township*, 176 *N.J.Super.* 78, 422 *A.2d* 112 (Ch.1980),[4] while not binding upon this court, squarely and properly addresses the issue.

In *Worts*, the Township sought to hold a special meeting and sent notice of that meeting to four newspapers. The court found that the publishing schedule for the newspapers was such that

---

[3] There is a discrepancy in the record regarding the dates of notification. The court has been provided with copies of the notice sent to each of the newspapers along with a transmittal note. The note to the Ocean County's Observer and the Tri-Town News is dated March 28, 1996, whereas the note to the Asbury Park Press is dated March 29, 1996. However, the actual facsimile communication result report shows that the notice was sent on March 29, 1996, to all three papers at about 5 P.M. If, in fact, the notice had been sent to the Ocean County's Observer on March 28, it would have been in a position to publish the notice on Friday, March 29. The court is at a loss to explain why the transmittal notes for the Ocean County's Observer and the Tri-Town News were dated differently and yet sent at the same time as the Asbury Park Press.

However, as noted, there is no dispute that the transmission actually took place on Friday, March 29, 1996. That is further buttressed by the fact that on that date the court heard an Order to Show Cause at which time the plaintiff-intervenors argued that the adoption of the resolution transferring the UCC functions to the County was illegal due to an alleged conflict of interest of two of the committee members. It was only after the restraints were entered on March 29, 1996, that it would have become necessary for the Committee to hold a special meeting to cure the alleged defect in the adoption of the resolution.

[4] *Worts* has been cited by the Appellate Division with apparent approval. *See Township of Bernards v. State, Dept. Of Community Affairs*, 233 *N.J.Super.* 1, 26, 558 *A.2d* 1 (App.Div.1989), *certif. denied*, 118 *N.J.* 194, 570 *A.2d* 959 (1989), and *certif. denied*, 118 *N.J.* 195, 570 *A.2d* 959 (1989).

only one could have published the notice 48 hours before the scheduled meeting. Judge Haines stated:

> I conclude that actual publication is not required. Nevertheless, the township's publication arrangements were still not sufficient to meet the requirements of the act.... *When a public body sends meeting notices to newspapers for publication and, to the actual or readily ascertainable knowledge of that body, those newspapers cannot publish the notice at least 48 hours in advance of the meeting, there is no compliance with the Open Public Meetings Act.* Logic demands this conclusion: were the opposite true, the purpose of the law would be circumvented easily. The legislative intent reflected in the act requires this interpretation. *N.J.S.A.* 10:4–8 d provides that public bodies must designate newspapers for the publication of notices which have 'the greatest likelihood of informing the public within the area of jurisdiction of the public body of such meetings....' Further, in the language of *Houman* (at 167 [382 *A.*2d 413]), it is expected that 'all reasonable effort to notify the public' will be made. The minimum notice to which the public is entitled is set forth in section 8 of the act, which requires 'written advance notice of at least 48 hours.' Thus, it is only when a public body has given 48 hours' advance notice to newspapers capable of timely publication that it can be concluded that all reasonable effort has been made.... *Id.* at 81–83, 422 *A.*2d 112 (emphasis added).

*See also, Patterson v. Cooper,* 294 *N.J.Super.* 6, 15–16, 682 *A.*2d 266 (Law Div.1994).

As discussed earlier, the notices involved here reached only one newspaper capable of publishing 48 hours in advance of the meeting. Therefore, this court concludes that the meeting of April 1, 1996, was in violation of the OPMA and the resolution adopted therein is void. As a result, the Township may not transfer its UCC enforcement activities to the County of Ocean without the consideration and adoption of a new resolution.