976 A.2d 444 (2009)
409 N.J. Super. 219
David B. BURNETT, Plaintiff-Appellant,
v.
GLOUCESTER COUNTY BOARD OF CHOSEN FREEHOLDERS and County of Gloucester, Defendants-Respondents.
No. A-6131-07T2
Superior Court of New Jersey, Appellate Division.
Argued April 30, 2009.
Decided August 20, 2009.
*447 Mark Cimino argued the cause for appellant.
Matthew P. Lyons, Assistant County Counsel, argued the cause for respondents (Samuel J. Leone, County Counsel, attorneys; Mr. Lyons, on the brief).
Before Judges PARRILLO, LIHOTZ and MESSANO.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
Plaintiff David Burnett appeals from a July 25, 2008 Law Division order dismissing, with prejudice, all but one count of his complaint filed in lieu of prerogative writs, which alleged violations of the Open Public Meetings Act (OPMA or the Act), N.J.S.A. 10:4-6 to -21, by defendant the Gloucester County Board of Freeholders (Board). The court, on cross-motions for summary judgment, determined the Board violated the OPMA during its November 20, 2007 closed session when it established a new public position, the Superintendent of Elections, and provided "[a]ll employees of the current Board of Elections would become the staff for the Superintendent of Elections, and all property currently belonging to the Board of Elections would become that of the Superintendent of Elections." Accordingly, the action creating the Superintendent of Elections position was voided, and the issue was referred back to the Board, giving it the right to conduct remedial proceedings in accordance with N.J.S.A. 10:4-15(a). The Board has not challenged this portion of the order.
The order also dismissed, with prejudice, the remaining counts of plaintiff's complaint, wherein he listed numerous executive sessions closed to the public, during which he alleged the Board conducted public business in violation of the Act. First, the motion judge concluded the request to void the Board's actions, pursuant to N.J.S.A. 10:4-15, was barred, as the events occurred beyond the statute's forty-five day limitation period. Second, with respect to plaintiff's request for injunctive relief, pursuant to N.J.S.A. 10:4-16, the trial court reviewed eleven alleged instances which the judge found to be "clearly on their face meritless," because the sessions discussed the settlement of litigation or personnel matters, areas excepted from the provisions of the OPMA. Further, the court concluded injunctive relief was not appropriate because the remaining allegations were remote and time barred by Rule 4:69-6. The court granted the Board's request for summary judgment and dismissed plaintiff's complaint.
On appeal, plaintiff does not challenge the motion judge's denial of relief under N.J.S.A. 10:4-15. Rather, he argues the court erred in denying prospective injunctive relief, pursuant to N.J.S.A. 10:4-16, as the alleged violations show a pattern of wrongful conduct in violation of the Act. Additionally, he challenges the motion judge's conclusion that the exceptions set forth in the Act apply to the Board's conduct.
*448 Following our review of this record, we are persuaded by plaintiff's arguments. As to the eleven closed session actions reviewed by the motion judge, we agree that based on this record, it does not appear they are all encompassed by the exceptions of N.J.S.A. 10:4-12(b)(7) and (8). We also determine the alleged violations were submitted as evidential support of the Board's past pattern of noncompliance with the OPMA and not intended to void the purported actions. If plaintiff is correct, and he provided evidence that the Board has repeatedly ignored its obligations to assure the public's presence in "all phases of the deliberation, policy formulation, and decision making," then the court must determine whether prospective injunctive relief is necessary to prevent future violations. In this regard, to support a request for injunctive relief, pursuant to N.J.S.A. 10:4-16, evidence of violation of the OPMA is not limited to Board actions that occur within forty-five days of the filing of plaintiff's complaint.
Accordingly, we affirm the motion judge's denial of all relief under N.J.S.A. 10:4-15, except for the Board's action on November 20, 2007. We affirm the dismissal of paragraphs 21 and 34 of plaintiff's complaint, as the discussions were properly held in closed sessions to discuss possible settlement of on-going litigation. We reverse the grant of summary judgment in favor of the Board and the dismissal of the remaining counts in plaintiff's complaint presented in support of a request for injunctive relief, pursuant to N.J.S.A. 10:4-16. Finally, we remand for further proceedings to review the remaining allegations to ascertain whether the Board violated the OPMA and whether a pattern of conduct was demonstrated warranting the imposition of prospective injunctive relief.
The facts are taken from the summary judgment record. Plaintiff is a Gloucester County resident and taxpayer. He filed a verified complaint alleging fifty-nine dates on which the Board violated the OPMA. The complaint alleged that from January 25, 2006 through November 20, 2007, the Board held twenty-four sessions closed to the public, during which the Board improperly discussed sixty-one matters and wrongfully acted on seventeen of those matters, none of which fall within a permissible statutory exception allowing action in closed session.
A reading of the complaint makes clear plaintiff sought affirmative relief in paragraphs 8, 9, 10 and 11 to void the actions taken by the Board. However, the allegations listed in paragraphs 14 through 70 are cited to evince what plaintiff labels as the Board's "clear pattern and practice of... ignoring the mandate of the [OPMA] by conducting the public's business in private" for which he sought an injunction to prevent future wrongful conduct.[1] Defendant denies any OPMA violation occurred while the Board was in executive session. The Board maintains each of the instances listed by plaintiff falls within a designated exception to OPMA compliance.
The motion judge did not review each allegation stated by plaintiff's complaint. However, he concluded the actions discussed in paragraphs 10, 14, 21, 34, 46, 50, 61 and 67 were discussions regarding the settlement of litigation, an area excepted from the OPMA, wherein the Board merely took permissible straw votes while in closed session. Further, paragraphs 9, 23 and 27 were determined by the court to *449 address "conditions of employment including salary" encompassed by the personnel exception to the OPMA. As to the remaining allegations, the motion judge stated:
Other actions challenged arguably may have been proper for closed session[;] discovery would obviously need to take place. However, it must be recognized that Freeholder Boards organize annually. It's to be found at N.J.S.A. 40:20-3, 40:20-23 and 40:20-75.
At the time of an organization there is a new Freeholder Board constituted. While there will be some members who remain from a prior Freeholder Board and indeed on some occasions there may be all members. Each new Freeholder Board once constituted becomes a new entity.
It is important to note that there is no challenge to any action of the 2008 Freeholder Board. The general statute well, it's not a statute of limitations. The [c]ourt rule to be found at [Rule] 4:69providesdash 6-provides that the general period for bringing action is 45 days.
The [c]ourt can enlarge it where it is manifest in the interest of justice which [c]ourts have interpreted involving public questions.
I decline to enlarge the time in this case for the following reasons. I've already determined that the essential relief sought, i.e., the voiding of the actions which the plaintiff challenges is time barred. I have determined that many of the challenges which the plaintiff has raised are meritless on their face.
Third, there has been a new Board constituted and there has been no challenge... [to] the operation of the [B]oard in 2008[, which] has [not] engaged in any actions which violate the Open Public Act.
And, finally, many of the actions are so very remote as I've indicated 41 or a full two-thirds of the actions challenged during the calendar year 2006. So for those reasons I am dismissing with prejudice the plaintiff's claims for injunctive relief.
Without considering whether the Board violated the OPMA, the court concluded plaintiff's remaining assertions were barred by Rule 4:69-6 and dismissed his complaint.
In reviewing an order granting summary judgment, this court employs the same standard of review as the trial court, Turner v. Wong, 363 N.J.Super. 186, 198-99, 832 A.2d 340 (App.Div.2003); Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App. Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998), which grants summary judgment "if the pleadings, depositions, [and] answers to interrogatories ... show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Guided by this standard, we examine the Board's conduct.
From the more than sixty instances recited in plaintiff's complaint, we first describe those identified by the motion judge as meritless. Thereafter, we relate additional instances highlighted by plaintiff in his merits brief as illustrative of the type of objectionable conduct demonstrating the Board wrongfully acted "in closed session with the public excluded." The nature of the Board's discussions and actions are gleaned from the closed session minutes.
On March 22, 2006, Deputy County Administrator, Chad M. Bruner, presented the details for settlement of two workers' compensation claims. The proposed payment to the first claimant was $24,934.25 for damages, plus $4,986.85 for counsel *450 fees and $650 for the county's legal fees. The second was $19,953 for damages, plus $3,990.06 for counsel fees and $650 for the county's legal fees. "It was the consensus of the Board to settle the claim for the amounts recommended."
On May 17, 2006, Patrick Madden, who provided the county's legal representation in Walker v. Gloucester County, advised a settlement had been reached, which required the county's approval. The county would pay $105,000 of the total $120,000 settlement, $102,500 of which would be paid by insurance. Mr. Leone, county counsel, stated, $17,000 of the $50,000 insurance deductible had been paid.
On June 21, 2006, Mr. Leone presented a recommendation from outside counsel to make payment to the realty owners in two condemnation matters, both of which "exceed the amount approved by resolution, thus the need for the freeholders to hear of them." The recommended payments were $29,000 and $36,000. "After a discussion of the matter, the [Board's] consensus was to agree with [the] recommendations."
On October 2, 2006, the Board "voted to pay over $50,000 as part of a settlement to an injured worker."[2]
On October 25, 2006, the Board agreed the county would contribute $500,000 of the total $3 million necessary to settle an action entitled King v. Gloucester County. In a closed session, "Mr. Bruner stated he needs the freeholders' authorization to increase the settlement amount from $300,000 to $500,000, which is the county's portion, with the insurance company paying the balance." During the executive session, the Board gave its authorization to proceed.
In that same closed session, the Board authorized a $10,000 increase in settlement authority previously given to counsel to resolve a workers' compensation matter.
On December 20, 2006, the Board discussed presenting a State ethics training seminar for department heads provided by the Attorney General's office. Director Stephen M. Sweeney suggested and Administrator Jack Fisher was instructed to check with the Attorney General to extend an "invitation to all municipalities in the county and h[old] it [at] a facility large enough to accommodate everyone."
At that same session, the Board awarded a $40,044.20 bonus to outside counsel representing the County Clerk in the matter of Bozie v. Gloucester County. The plaintiff in that case challenged the cost charged for photocopies of documents. Mr. Leone explained there was precedent for awarding "bonuses" to government employees at the end of the year, and "it was the consensus to pay Mr. [Harvey] Johnson this money for the work done in this case."
On February 7, 2007, "Mr. Bruner advised the freeholders of a need to pay Harold Crass [ ] [$14,000] for legal work done relative to the matter at the Pitman Golf Course." "It was the consensus of the freeholders to have this done."
On March 7, 2007, the Board discussed the proposed replacement member of the Board of Trustees for Gloucester County Community College, who would complete the term of a resigning member.
On March 21, 2007, the county administrator advised of the need for settlement authority for a workers' compensation matter. The "[c]onsensus was given to settle [the] contract."
*451 On June 6, 2007, county counsel discussed the settlement of a workers' compensation matter requiring payment of $20,000.
The following additional examples of closed session actions were emphasized by plaintiff, but not discussed by the motion judge.
On May 3, 2006, the Board agreed to allow Deptford Township to use a piece of county equipment. "[I]t was the consensus of the freeholders to move forward with this, and specifically to allow Deptford Township to use the equipment requested."
On June 7, 2006, the Board discussed advertising for the position of a risk manager. "Mr. Bruner stated the county is ready to go forward with the hiring of a risk manager. Director Sweeney instructed Mr. Bruner to have this position advertised, and move forward with the hiring process."
In that same session, the Board discussed expansion of the VA clinic, which was to be completed by early September, and "quite a bit of work" was "being done in house by county employees."
On October 11, 2006, the Board discussed and arrived at a consensus that the county would assume the cost of removal of deer carcasses from roads. The possible options included "leave it to the municipalities" or require "the county to do the removal and then bill the municipalities," which "would be a contract that would have to be bid." Apparently rejecting these choices, the consensus reached was to have the county assume the cost and responsibility for removal.
On November 21, 2006, the Board discussed a written policy, whereby county employees would be prohibited from accepting gifts from vendors, to be communicated to all employees through memoranda. "Freeholder [Warren C.] Wallace suggested an individual be put in place to monitor compliance. After a discussion of the matter, it was the consensus to institute this policy as soon as possible before the holidays."
At the same closed session, the Board arrived at a consensus to allow the City of Woodbury to use the ceremonial courtroom for a reorganizational meeting. The request was approved "provided the City supplies a certificate of insurance for the event."
On December 6, 2006, the Board discussed a job description for a county Authority Official/Compliance Officer to be created. Director Sweeney requested Board members direct any questions or changes to the county administrator.
On May 2, 2007, the Board sent a letter in support of Rowan University's Tech Park project, which required the New Jersey Department of Environmental Protection's approval for extending New Jersey American Water lines through Mantua Township. "Consensus was given" at the closed session "to support said project."
Finally, on August 22, 2007, the Board discussed consolidating two engineering positions to create one assistant county engineer position. Consensus was given during the non-public session to retain an engineer with a salary ranging between $82,000.00 and $85,000.00.[3]
We turn our review to the OPMA, keeping in mind plaintiff's assertions that the Board has repeatedly acted in contravention of the Act. We also examine the statutory exceptions that allow a public *452 body to conduct certain work sessions while excluding public participation.
The OPMA, "frequently referred to as the `Sunshine Law,' requires meetings of public bodies to be open to the public at all times, except in certain designated [instances]." Oughton v. Bd. of Fire Commr's of Moorestown Tp., 178 N.J.Super. 633, 641, 429 A.2d 1096 (Law Div. 1980), aff'd in part, rev'd in part, 178 N.J.Super. 565, 429 A.2d 1059 (App.Div. 1981). New Jersey has a history of commitment to public participation in government. Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 529, 874 A.2d 1064 (2005); Rice v. Union County Reg'l High Sch. Bd. of Educ., 155 N.J.Super. 64, 70, 382 A.2d 386 (App.Div.1977), certif. denied, 76 N.J. 238, 386 A.2d 863 (1978). The Act reflects this commitment. South Jersey Publ'g Co. v. N.J. Expressway Auth., 124 N.J. 478, 490, 591 A.2d 921 (1991).
In the body of the statute, the Legislature clearly defined its intent, declaring it is
the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies, is vital to the enhancement and proper functioning of the democratic process; that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society, and hereby declares it to be the public policy of this State to insure the right of its citizens to have adequate advance notice of and the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way except only in those circumstances where otherwise the public interest would be clearly endangered or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion.
[N.J.S.A. 10:4-7.]
Thus, the Act creates a strong presumption of access to the meetings of public bodies, allowing the public to view all meetings "at which any business affecting the public is discussed or acted upon in any way[.]" See Polillo v. Deane, 74 N.J. 562, 571, 379 A.2d 211 (1977) (discussing the importance of information to our form of government and the relationship between secrecy and public corruption).
To this end, the Act must be liberally construed in favor of openness, N.J.S.A. 10:4-21, and "any exception from the full public disclosure mandated by the statute is to be strictly construed." Lakewood Citizens for Integrity in Gov't, Inc. v. Lakewood Tp. Comm., 306 N.J.Super. 500, 505, 703 A.2d 1020 (Law Div.1997). When considering whether a violation of the Act has occurred, "strict adherence to the letter of the law is required." Rice, supra, 155 N.J.Super. at 70, 382 A.2d 386.
Public access is tempered by enumerated "circumstances under which the presumption of openness is rebutted." Payton v. N.J. Tpk. Auth., 148 N.J. 524, 555-56, 691 A.2d 321 (1997). The nine areas of exception include: legally confidential situations, matters affecting the receipt of federal funds, an individual's private date, collective bargaining negotiations, purchase of realty or investment information and decisions that could adversely affect the outcome if made public, sensitive public safety data, pending litigation, contract negotiations, employment, and certain deliberations following a public hearing involving imposition of civil penalties or suspensions of licenses of specific persons. N.J.S.A. 10:4-12(b)(1) to (9). Thus, discussions in closed sessions *453 are permitted when public deliberation of the subject "would endanger the public interest or cause an unwarranted invasion of personal privacy or other individual rights." South Jersey Publ'g, supra, 124 N.J. at 490, 591 A.2d 921.
Because of the need for strict adherence to the Act, Dunn v. Mayor & Council & Clerk of Laurel Springs, 163 N.J.Super. 32, 394 A.2d 145 (App.Div. 1978), use of the exceptions is qualified. First, the courts have construed subsection 12(b) against closure, in light of the stated legislative intent for openness. Payton, supra, 148 N.J. at 556, 691 A.2d 321 (citing Accardi v. Mayor and Council of N. Wildwood, 145 N.J.Super. 532, 540-41, 368 A.2d 416 (Law Div.1976)). Second, following the outlined procedure to do so, "if a public body legitimately conducts a ... closed session under any of the exceptions enumerated..., it nevertheless must make the minutes of that meeting promptly available to the public," once the need expressed for the closed session has been eliminated. Id. at 556-57, 691 A.2d 321; South Jersey Publ'g, supra, 124 N.J. at 493, 591 A.2d 921. The minutes must "contain sufficient facts and information to permit the public to understand and appraise the reasonableness of the public body's determination[s]" made in a non-public session. South Jersey Publ'g, supra, 124 N.J. at 493, 591 A.2d 921.
In response to plaintiff's allegations, the Board defends its conduct, asserting it has not violated the OPMA. First, the Board suggests its belief that the actions taken were within Bruner's role as county administrator, so a vote of the Board was unnecessary. Moreover, the Board argues the subjects discussed in closed sessions were authorized under the exceptions set forth in N.J.S.A. 10:4-12(b). We consider each of these arguments.
The Board did not assert in its answer, or argue before the trial judge, what it now suggests on appeal, that the instances cited by plaintiff were merely "reports" by the county administrator that did not require Board vote or action. Although this court ordinarily will not consider issues not presented to the trial court, Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142, (1973), we quickly dispel the Board's contention, which we find disingenuous.
A review of the county resolution creating the position of county administrator, adopted pursuant to N.J.S.A. 40A:9-42, does not allow the county administrator to freely act outside the scope of regular daily functions in accordance with previously established policies. The regulations adopted in this regard state:
The County Administrator oversees the day-to-day operations of the County in accordance with policies established by the Board of Freeholders.

....
The County Administrator shall have the power to recommend, when and where appropriate, the appointment, promotion, removal, suspension, discipline, supervision and control of all department heads.... The County Administrator will be authorized to sign-off on all personnel action below the level of department head.
[ADM-3 and 3.1 County of Gloucester Admin. Regs. (emphasis added).]
The county administrator, serving as the "chief operating officer of the [c]ounty," implements the policies established and adopted by the Board. Contrary to the Board's suggestion, he does not initiate governmental action and has no authority, independent of the Board's direction, to pay a "bonus" to outside counsel, create an Assistant County Engineer position, authorize the county's support of a State *454 project, loan county equipment, or spend county funds to assume a responsibility, which rests with the individual municipalities. Accordingly, we reject the Board's assertion that the cited actions were legally devolved to Bruner, making the Board's "review" perfunctory.
Alternatively, the Board maintains the executive session discussions were permitted by enumerated OPMA exceptions, including:
(6) Any tactics and techniques utilized in protecting the safety and property of the public, provided that their disclosure could impair such protection. Any investigations of violations or possible violations of the law.
(7) Any pending or anticipated litigation or contract negotiation other than in subsection b.(4) herein in which the public body is, or may become a party.
Any matters falling within the attorney-client privilege, to the extent that confidentiality is required in order for the attorney to exercise his ethical duties as a lawyer.
(8) Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be adversely affected request in writing that such matter or matters be discussed at a public meeting.
[N.J.S.A. 10:4-12(b).]
The Board identifies the exceptions relied upon to allow each closed session. We review the Board's position for those sessions enumerated above.
Citing N.J.S.A. 10:4-12(b)(6), the Board suggests the use of facilities, discussed on November 21, 2006, was necessary to protect the safety and property of the public. Nevertheless, as the motion judge aptly noted during argument, the Board's minutes on this date do not evidence any discussions related to "tactics and techniques utilized in protecting [public] safety." Also, no information was provided by an official charged with providing safety in the courthouse, such as the undersheriff. Instead, the discussion was limited to whether to allow a municipality to use a county facility, which appears to be a routine business item not encompassed by the claimed exception.
In several other instances, the Board argues the executive sessions were necessary to discuss the settlement of on-going and anticipated litigation. These include March 22, May 17, June 21, October 2, and October 25, 2006, along with March 22, and June 6, 2007. In most instances, the closed session minutes give general descriptions of the on-going or anticipated litigation. In every instance, county counsel was present, and on May 17, 2006, the attorney handling the specific legal matter on behalf of the county attended the session and discussed the benefits of a proposed settlement.
In his analysis, the motion judge concluded plaintiff's claim was groundless and the discussions regarding legal settlements were permissibly held in closed session, pursuant to N.J.S.A. 10:4-12(b)(7). Plaintiff asserts the Board exceeded the scope of the exception, which allows discussion, when it actually voted to authorize the payment of a predetermined settlement sum and never formalized its decision thereafter by holding public discussion and passing a resolution.
The pending litigation exception, set forth in N.J.S.A. 10:4-12(b)(7), *455 empowers a public body to exclude the public to protect any "material covered by the attorney-client privilege[.]" Payton, supra, 148 N.J. at 558, 691 A.2d 321; Press of Atl. City v. Ocean County Joint Ins. Fund, 337 N.J.Super. 480, 492, 767 A.2d 533 (Law Div.2000). "If a communication is covered by the privilege, then the public body legitimately may meet with its attorney in closed session." Payton, supra, 148 N.J. at 558, 691 A.2d 321.
To invoke this exception, the subject under discussion must be the `pending or anticipated litigation' itself, i.e., the public body must be discussing its strategy in the litigation, the position it will take, the strengths and weaknesses of that position with respect to the litigation, possible settlements of the litigation or some other facet of the litigation itself.
[Houman v. Pompton Lakes, 155 N.J.Super. 129, 145, 382 A.2d 413 (Law Div.1977).]
Reviewing the minutes from the recited dates, it is evident that a portion of the closed discussions properly addressed "the strengths and weaknesses of th[e] [county's] position with respect to the litigation, [or] possible settlement[ ] of [ ] litigation." Further, the discussions held with counsel are privileged and the public rightfully was excluded.
The trial court correctly concluded the Board implemented and used N.J.S.A. 10:4-12(b)(7) to discuss with counsel the parameters of possible settlement in the matters identified in paragraphs 21 and 34. We concur with the court's dismissal. However, the matters identified in paragraphs 10, 18, 46, 50, 61 and 67 appear to include not only permissible settlement discussions, but also evidence of the Board's agreement approving a predetermined settlement amount and authorizing the release of funds to accomplish that result. Plaintiff maintains, even if the closed session discussions were appropriate, the action of approving and actually paying the settlement exceeded the scope of the exception because the Board never presented the matter at a public meeting.
We agree with the trial judge's analysis of these sessions that all discussions regarding on-going litigation and possible settlement qualified to be held in executive session. We are satisfied the exception was properly invoked by the Board. Hartz Mountain v. NJSEA, 369 N.J.Super. 175, 187, 848 A.2d 793 (App.Div.2004). However, the focus of plaintiff's objection is that in a closed session, the Board took official action by approving something equivalent to a motion and authorizing implementation of the approved matter. Thereafter, the subject was never presented in a public session so the final Board decision was essentially hidden from public scrutiny. See Faulhaber v. Tp. Comm., 274 N.J.Super. 83, 93, 643 A.2d 52 (Law Div.1994) (harm was mitigated when improper non-public discussions held in violation of the OPMA were ultimately made public when the ordinance at issue was introduced and adopted).
The OPMA is violated when formal action is taken in the closed session and never ratified or even discussed in a public session. In Houman, supra, 155 N.J.Super. at 157, 382 A.2d 413, the court concluded under the OPMA, the borough council was entitled to hold a closed meeting to discuss whether to take tax appeals and hire outside counsel. However, the council violated the Act by taking formal action because the final decision was not appropriate to be made in a closed session.
"The intent of the statute [N.J.S.A. 10:4-12(b)(7)] is to allow officials to meet privately with counselors and advisors in order to discuss policy, formulate *456 plans of action and generally to have an exchange of ideas." Id. at 154-55, 382 A.2d 413 (citing Woodcock v. Calabrese, 148 N.J.Super. 526, 535, 372 A.2d 1178 (Dist.Ct.1977)).
Our review of the public session minutes in the record unearthed only one instance, unrelated to the instant litigation matters, when the closed session discussions were ratified in a public session. Thus, the summary judgment record suggests the Board voted to approve various settlements and disbursements of county funds, as identified in paragraphs 10, 46, 50, and 61, without benefit of public discussion or resolution. If that occurred, the conduct flies in the face of the requirement for open government in pursuit of the "cherished ideal" of "government of the people." Polillo, supra, 74 N.J. at 570, 379 A.2d 211. See Stonehurst at Freehold, Section One, Inc. v. Tp. Comm. of Freehold, 139 N.J.Super. 311, 314, 353 A.2d 560 (Law Div.1976) (generally, a municipality may only take action at a public meeting by resolution or ordinance).
Finally, the motion judge, without specifically stating his reasons, concluded the matters on December 20, 2006, along with February 7 and March 7, 2007, were exempt because they involved "personnel matters." N.J.S.A. 10:4-12(b)(8). In responding to plaintiff's brief, the Board also identifies those exceptions justifying holding closed sessions on June 7, October 11, November 21, and December 6, as well as August 22, 2007.
"The statutory exemption for personnel matters, recognizing the potentially-inhibiting effect of public debate about the qualifications, performance, merit, and shortcomings of specific employees, allows that debate to occur in executive session." South Jersey Publ'g, supra, 124 N.J. 478, 493, 591 A.2d 921 (1991). The exception is "focused on free and uninhibited discussion about matters relating to the hiring, firing, performance, compensation, and discipline of public employees." Ibid.
Without the basis for the motion judge's conclusion, we are hard pressed to concur with the dismissal of these three paragraphs of plaintiff's complaint. Two of the three sessions involved awarding a bonus or other remuneration to outside counsel. The remaining item arguably involves discussion on a possible appointment, which may fall within the exception, however, without more information it is unclear. Nevertheless, in respect of other sessions plaintiff focuses on, it appears the Board overstates the scope of the allowed exclusion and its position is transparently incorrect because the closed sessions adopted policies affecting county employees generally or the creation of new county positions, and did not relate to discussions regarding a specific employee. Neither of these areas are excepted. Oughton, supra, 178 N.J.Super. at 643, 429 A.2d 1096.
In summary, we agree in some instances that the closed session discussions were permissible to discuss the settlement of litigation. However, we cannot state with certainty that the Board's conduct in those closed sessions, now brought to light in plaintiff's complaint, appropriately complied with the OPMA. We must reject the generalized notion that a public body may vote on a matter and direct the county administrator to act in non-public sessions, as such conduct undermines the purpose of the Act. See e.g., In re Consider Distrib. of Casino Simulcasting Special Fund, 398 N.J.Super. 7, 17, 939 A.2d 230 (App.Div. 2008) (public body may not reach a decision based on a closed discussion without a public meeting); see also Polillo, supra, 74 N.J. at 578, 379 A.2d 211 (an agency may not close its doors when conducting negotiations or hammering out policies and then put on an appearance of open government *457 by allowing the public to witness the proceedings at which its action is formally adopted).
In fairness to the Board, it was not required to respond to plaintiff's assertion requesting injunctive relief. The Board should be given the opportunity to respond to plaintiff's argument that the OPMA was violated because the past closed-session actions were not later presented in a public meeting. Without these facts, we cannot determine whether the Board fulfilled its responsibility under the Act to approve litigation expenditures, create county positions, award bonuses, and the like, during a general open meeting.
If, upon further review by the trial court, it is concluded the Board's past conduct exceeded the bounds defined by the OPMA, the judge must determine the availability of an appropriate remedy. The statute includes three sections addressing relief when the court determines a violation of the Act occurred.
In N.J.S.A. 10:4-15, the Act allows a court to void the unsupported action taken in violation of the OPMA. Relief under this section must be requested within forty-five days of the date the action sought to be voided is made public. This allows the "public body [to] take corrective or remedial action by acting de novo at a public meeting held in conformity with this [A]ct." N.J.S.A. 10:4-15(a).
The court also is empowered to enter orders, including injunctions, as necessary "to assure compliance with the provisions of the [A]ct." N.J.S.A. 10:4-16. The action taken by the public body would not be affected, however, based upon the ordered relief, future conduct by the public body must conform as ordered. This section does not contain the forty-five-day limitation period specified in N.J.S.A. 10:4-15(a). Finally, N.J.S.A. 10:4-17 provides a summary procedure to recover penalties for willful violations of the Act.
In this matter, the motion judge correctly voided the Board's actions on November 20, 2007, and concluded the remedy under N.J.S.A. 10:4-15(a) was not available with respect to the remaining paragraphs of plaintiff's complaint. Bernards Tp. v. Dept. of Cmty. Affairs, 233 N.J.Super. 1, 25, 558 A.2d 1 (App.Div.), certif. denied, 118 N.J. 194, 570 A.2d 959 (1989); Jersey City v. Dep't of Envtl. Prot., 227 N.J.Super. 5, 22, 545 A.2d 774 (App.Div.), certif. denied, 111 N.J. 640, 546 A.2d 551 (1988). Plaintiff does not disagree with this determination, but challenges the denial of his request for injunctive relief.
N.J.S.A. 10:4-16 states a "court shall issue such orders and provide such remedies as shall be necessary to insure compliance with the provisions of this [A]ct." We found no authority aiding our review of the implementation of this provision. However, an opinion of this court, which broadly discusses the nature of the allowed relief under the statute provides some guidance.
In Loigman v. Tp. Comm. of Tp. of Middletown, 308 N.J.Super. 500, 501, 706 A.2d 262 (App.Div.1998), the plaintiff pursued an action in lieu of prerogative writs against a municipality for violations of the OPMA. The trial court denied relief, except to order that: "The Township must comply with the guidelines set forth in [case law] as to notice, resolution to enter closed session, and matters that may be discussed in closed session, N.J.S.A. 10:4-12(b)." Id. at 502, 706 A.2d 262. Plaintiff alleged the Township's noncompliance with the order and filed an application for enforcement of litigants' rights, which was dismissed with an instruction to file a new complaint alleging violations of the OPMA. Ibid. We reversed. Id. at 504, 706 A.2d 262.
*458 In discussing the scope of relief allowed by N.J.S.A. 10:4-16, we stated: "Courts may issue orders requiring a public entity to comply with the OPMA and such orders can be prospective in operation" and permissible remedies "can include equitable, declaratory, or other kinds of relief[.]" Id. at 503, 706 A.2d 262.
Additionally, "[w]here injunctions are creatures of statute, all that need be proven is a statutory violation. Other jurisdictions, having similar open meetings acts, hold that the legislative intent is to allow injunctions once a violation is shown and relief is deemed appropriate." Matawan Reg'l Teachers Assoc. v. Matawan-Aberdeen Reg'l Bd. of Educ., 212 N.J.Super. 328, 335, 514 A.2d 1361 (Law Div.1986) (internal citations omitted). Further, when considering the appropriateness of imposing a statutory injunction, courts are instructed "to consider the nature, quality and effect of the noncompliance and fashion a corrective remedy appropriate to the particular situation[,]" Polillo, supra, 74 N.J. at 579, 379 A.2d 211, always mindful that it is the courts' responsibility to safeguard the public interest. The remedial statutory provisions on N.J.S.A. 10:4-16 "contemplate maximum flexibility in rectifying governmental action which falls short of the standards of openness prescribed for the conduct of official business." Id. at 579, 379 A.2d 211.
Plaintiff argues he successfully showed the Board acted in violation of the OPMA within forty-five days of the initiation of requested relief, and the balance of the items were evidential of the Board's wrongful conduct in support of a prospective injunction. The motion judge rejected this position and concluded the balance of plaintiff's allegations (1) did not evince violations of the Act; (2) were too remote to warrant consideration because most concerns occurred in 2006, while the Board was newly constituted on January 1, 2008; and (3) were untimely, pursuant to Rule 4:69-6(a). We examine each of these reasons.
First, the judge concluded "[a]n injunction with respect to future actions, i.e., one that would be prospective in nature ... necessary for a court to order to insure future compliance" was not needed because "[p]laintiff has failed in this case to demonstrate that such an injunction is required." Generally, the motion judge determined plaintiff's claims of violation were meritless, as the Board's discussions were allowed by N.J.S.A. 10:4-12(b)(7) and (8). In reversing, we have discussed the additional analysis needed to reach a determination of whether the Board's actions comply with the OPMA. Our examination of the Board's actions in closed sessions show there are serious questions raised regarding the Board's compliance with the OPMA, even though the limited record precludes final determination of whether there are numerous past violations, which when taken together, may reflect a violation of the OPMA. We are satisfied plaintiff has presented a sufficient factual dispute making summary judgment inappropriate. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
Second, the motion judge rejected plaintiff's request, noting each year a new board is constituted and "[e]ach new Freeholder Board once constituted becomes a new entity." Since plaintiff failed to allege OPMA violations in 2008, the court concluded the past alleged violations were too remote. We reject this basis to support dismissal.
Although it is undisputed that a newly constituted Board was sworn in on January 1, 2008, it cannot be assumed that the new Board would not continue the questionable *459 practices of its predecessor without conducting an examination of whether the composition of the Board had significantly changed. It is artifice to conclude the newly constituted Board, if composed of the same, but reelected officials, would somehow change its past practices. This is particularly so in light of the court's finding that the Board, in fact, violated the OPMA within forty-five days of plaintiff filing suit.
Finally, the motion judge imposed the forty-five day period for presenting complaints stated in Rule 4:69-6(a). Although the time period may be enlarged, Rule 4:69-6(c), the court declined to do so. Plaintiff maintains relief under N.J.S.A. 10:4-16 contains no limitations period. Implicit in plaintiff's argument is that the relief allowed in N.J.S.A. 10:4-15 is independent of any relief allowed in N.J.S.A. 10:4-16. Thus, although plaintiff may be out-of-time to void the unwarranted actions taken, any pattern showing a public body repeatedly ignores the OPMA requirements necessitates imposition of prospective injunctive relief to assure the public that its government will operate in the open. We agree.
When examining the timeliness of plaintiff's request, we are told plaintiff sought copies of all the Board's minutes for a two-year period and then discovered what he characterizes as a "pattern of conduct," i.e., taking official action on public matters behind closed door work sessions. The record does not reflect when the minutes of the Board's closed sessions were made public or when plaintiff should have reasonably discovered the purported OPMA violations. At issue is whether evidential consideration of Board actions taken as much as two years prior to the commencement of litigation is appropriate. The motion judge concluded the limitations period in Rule 4:69-6 precluded the remedy based on the age of the Board's actions.
Rule 4:69-6(a) states: "No action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed except as otherwise provided by paragraph (b) of this Rule." Apropos to this matter we ask, when does plaintiff's right to review accrue? In answering this question, we do not agree Rule 4:69-6 mandates suit be brought within forty-five days of the date of the violative action. This is the standard specified in N.J.S.A. 10:4-15, necessary to void a public body's action taken in violation of the OPMA. The same limitations period is not repeated in N.J.S.A. 10:4-16. Applying the cannon of statutory construction, which provides, "inclusion of one requires exclusion of the other," suggests the Legislature intentionally omitted a period of limitations when relief, other than voiding the action of the public body, is sought. Township Comm. of Neptune v. Stagg, 312 N.J.Super. 312, 317, 711 A.2d 940 (App. Div.1998). We do not believe the Legislature intended to burden citizens with the obligation to file repeated complaints alleging OPMA violations every forty-five days in order to successfully obtain prospective injunctive relief. Moreover, strict application of the rule could actually inhibit the award of injunctive relief in an appropriate case. Since a successful challenge to a public body's action brought within forty-five days would result in invalidating the action, pursuant to N.J.S.A. 10:4-15, the need for injunctive relief would essentially be obviated.
Here, plaintiff proved a recent violation and gave numerous examples of what he suggests shows the Board's past disregard for the Act's statutory mandate, which constitutes a public injury that must not go unchecked. In assessing the evidence, the *460 trial court should, for example, examine whether the Board failed to approve litigation resolutions in public sessions or consistently created county positions without deliberations in public. In doing so, we acknowledge equitable considerations, such as the promptness in plaintiff's presentation, are relevant to whether relief should be granted. While recognizing plaintiff's interest is on behalf of the public, parties should not rest on their rights. Reilly v. Brice, 109 N.J. 555, 559, 538 A.2d 362 (1988). Thus, the trial court must also examine whether plaintiff's request was reasonably prompt and whether the Board's conduct gave the public a reason to question its actions.
Thus, we conclude a citizen's request for injunctive remedies, based on evidence of OPMA violations, may accompany a request for relief sought under N.J.S.A. 10:4-15. Here, plaintiff alleged one timely violation causing the court to nullify the Board's action. The balance of the perceived violations, if proven, also should be considered as proofs when determining whether an injunction is necessary to insure future compliance with the Act. The heart of the Act seeks to avoid "secrecy in public affairs," which "undermines the faith of the public in government." N.J.S.A. 10:4-7. The public interest demands no less than the court's scrutiny of a citizen's challenge to the government's wrongful restraint on the public's participation in the work of the people.
In conclusion, we affirm the dismissal of paragraphs 21 and 34 because the subject of the closed session discussion was excepted by N.J.S.A. 10:4-12(b)(7), and the work session does not evince action was taken. We reverse the court's order dismissing the remaining paragraphs of plaintiff's complaint, and remand for further proceedings to determine whether the Board's conduct violated the OPMA, and, if so, whether a pattern of non-compliance has been demonstrated to warrant imposition of prospective injunctive relief to curb future violations. We leave to the trial judge's sound discretion the determination of the necessary proceedings on remand. We suggest the court conduct a case management conference to discern whether and to what extent further discovery is required, and thereafter, whether a plenary hearing would aid its disposition.
Affirmed in part, reversed in part, and remanded in part.
NOTES
[1] On April 25, 2008, the motion judge granted the Board's motion for partial summary judgment and dismissed paragraphs 20, 26, 32, 38, 44, 49, 60, 69 and 70 of the complaint. Plaintiff has not appealed that order.
[2] The record does not contain the minutes from this closed session. The allegation is recited from plaintiff's complaint.
[3] Because no party appealed the order regarding the Board's actions on November 20, 2007, we have omitted discussion of that session.